**UNITED STATES of America, Plaintiff,**

v.

**Kenneth C. VON DER HEIDE, Defendant.**

**Crim. Nos. 1219–51 to 1222–51.**

United States District Court District of Columbia.

Jan. 26, 1959.

B. Paul Noble, Washington, D. C., for defendant, for the motion.

Oliver Gasch, U. S. Atty., and Oscar Altshuler, Asst. U. S. Atty., Washington, D. C., for the Government, opposed.

HOLTZOFF, District Judge.

This is a motion to set aside a judgment of conviction and a sentence imposed by this Court on September 14, 1951, and later reduced on October 24, 1951. The sentence was pronounced on a plea of guilty previously entered at arraignment before Judge Matthews, on charges of housebreaking and grand larceny.

This is one of numerous motions under 28 U.S.C. § 2255 to vacate a sentence, with which this Court has been flooded during the past few years. While the vast majority of these applications are entirely lacking in merit and most of them are frivolous, nevertheless, each requires thorough examination and careful study, thus resulting in a considerable unnecessary burden on a busy Court. The present application differs from the others in one respect. Most of them are filed by prisoners *in propria persona*. They are generally handwritten and prepared either by the parties themselves or by their fellow inmates in the enforced leisure of confinement, and are mailed from the penal institutions in which the prisoners are incarcerated. Because of this circumstance, it is necessary to examine each petition of this type *ex parte* in order to determine whether it sets forth detailed facts that, if true, would constitute a ground for relief. The present application, however, is filed by counsel retained and compensated by the prisoner and, for this reason, the matter was set down for hearing without preliminary scrutiny. It should be noted that counsel who makes this motion is not the same counsel who had previously appeared for the defendant. Originally the defendant, purporting to be impecunious, was represented by counsel appointed by the Court, who acted in his behalf at the entry of the plea, at the imposition of sentence, and in connection with the subsequent application for reduction of the penalty.

While in form this motion seeks to vacate the sentence and judgment of conviction, it is, in fact, an attack on the arraignment proceeding at which the defendant pleaded guilty, it being the contention of defendant's counsel that in some way which he does not specify his client was deprived of his constitutional rights by the manner in which the plea was accepted. Subsequently to the entry of the plea this case was assigned to me as a matter of routine for the imposition of sentence. Thus, I find myself in the position of being required to determine the validity of proceedings that took place before Judge Matthews. Ordinarily, a judge who has to pass upon the actions of a judge of co-ordinate jurisdiction, especially another member of the same Court, finds himself in a somewhat difficult and delicate position. As will hereafter appear, however, no such problem arises in this instance, since the matter is simple and clear.

The defendant, Kenneth C. Von der Heide, was arrested by officers of the Metropolitan Police Department of Washington, D. C., on August 4, 1951, on several charges of housebreaking and larceny. On August 20, 1951, four indictments were returned against him, charging housebreaking into four different apartments on four different dates. Three of them also charged grand larceny, one in the sum of $938, another in the sum of $720, and still another in the sum of $1,005. It appears that the defendant was arrested in *flagrante delicto* while committing the fourth of the housebreakings of which he was accused.

On August 23, 1951, the defendant was arraigned. Judge Matthews of this Court was presiding at arraignments that day. When the case was called, the

defendant was asked whether he had a lawyer and replied in the negative. He likewise responded in the negative to the question whether he had money to hire a lawyer, but answered in the affirmative to the still further inquiry whether he wanted the Court to appoint some one to defend him. It was suggested to him then that he might enter a plea of not guilty at that time and that the Court would thereupon appoint an attorney for him and set a date for trial. The defendant replied, "Well, I would like to enter a plea of guilty now". The judge then stated that the Court would not take a plea of guilty until counsel had an opportunity to talk to the defendant. The Court then immediately designated a member of the bar to confer with him. Obviously this action was equivalent to assigning counsel to the defendant, even if that exact terminology was not used. It is futile to cavil, as counsel seeks to do, whether this action was an effective appointment of counsel. Manifestly it was. The stenographic transcript of the proceedings indicates that at that point counsel and the defendant retired from the courtroom in order to confer.

Later in the day the case was called a second time. The defendant again appeared before the bar, this time with counsel. The latter stated in open court that he had conferred with the defendant in the cell block; that the defendant went over with counsel individually each count of each indictment; and that the defendant admitted his guilt. Counsel's statement also adverted to some other circumstances that are not material at this juncture. The defendant was thereupon formally arraigned and pleaded guilty to each indictment. The Court then requested counsel previously designated to continue to represent him.

In accordance with the customary procedure, after the entry of the pleas, the Court referred the case to the Probation Office for a presentence investigation. In due course the case came on for sentence before me on September 14, 1951. A detailed presentence investigation report had been previously submitted by the Probation Office.

The presentence investigation report shows the following facts. The defendant broke into four different apartments in the same apartment house, at 5415 Connecticut Avenue in this city, on July 7, 1951, July 8, 1951, July 26, 1951, and August 4, 1951, respectively. On each of the first three occasions he stole a considerable amount of property consisting of jewelry, silverware, and other small articles, as well as some money. He used the same *modus operandi* in each instance, namely, by forcing the lock with a piece of celluloid. On the fourth occasion the police laid a trap in an empty apartment which they thought might be invaded by the thief, and the defendant was caught in the apartment after he broke in and entered it. In his interview with the probation officer, he admitted everything frankly, even stating that on other occasions when he was in Washington, he committed other offenses without being caught. He explained that his practice was to go into various apartment buildings, look for an apartment with a newspaper or milk bottles in front, indicating that the tenants were away, and then take a chance on finding no one inside. He told his wife that he was buying and selling antiques and jewelry. The police informed the probation officer that the defendant had been very cooperative, and that through his efforts they were able to recover from $10,000 to $15,000 worth of stolen property, mostly from an antique dealer in Philadelphia, and were trying to find some more. One hundred and thirty charges of housebreaking, sixty-one charges of grand larceny, and forty-three charges of petit larceny were placed against him, but apparently it was deemed by the United States Attorney sufficient to prosecute him on the four cases here involved. The report further showed that the defendant had been arrested numerous times in other cities and that he had served a term in the Florida State penitentiary for robbery, and was later again convicted in Florida on a charge of breaking and entering.

When the matter came on for sentence on September 14, 1951, the defendant's

assigned counsel made a statement in his behalf. The Court imposed a sentence of imprisonment for a term of five to fifteen years in each case, two of the sentences to run consecutively, and the other two concurrently with the former. Consequently, the aggregate sentence was for a term of ten to thirty years. Shortly thereafter defendant's assigned counsel made an application for a reduction of sentence based on the unusual frankness, assistance and cooperation extended by the defendant to the Police Department, thereby enabling the authorities to solve a long series of housebreakings and thefts, as well as to recover much of the stolen property. Government counsel, after conferring with the appropriate police officials, indicated that the Government would have no objection, since to reduce the sentence might have a salutary effect on law enforcement by possibly encouraging other criminals to extend similar cooperation to the authorities. Accordingly, on October 24, 1951, each of the four sentences was decreased to a term of three to ten years, thereby reducing the aggregate sentence to a term of six to twenty years. In due course the Bureau of Prisons transferred the defendant to the Federal penitentiary in Atlanta, for the service of his sentence.

■ The Court will take judicial notice of the records of the Department of Justice. It appears from the files of the Federal Parole Board that the defendant became eligible for parole on September 27, 1957, but that the Board denied his application for this relief on November 20, 1957. His maximum sentence expires on September 13, 1971, but with commutation for good behavior he will be automatically entitled to conditional release on February 16, 1965, unless sooner paroled, since it is always possible to renew the application for parole. In other words, the sentence remains within the control of the Parole Board from the date on which the prisoner became eligible for parole until the expiration of the term.

Some time subsequently to the denial of his application for parole, the defendant retained his present counsel, who in due course filed the instant motion to set aside the judgment of conviction and sentence under 28 U.S.C. § 2255. Although the basic rules governing such motions are elementary and well known, they, nevertheless, are often ignored by defendants and even at times by members of the bar. For this reason, it seems appropriate at this point to recapitulate these principles briefly.

■ Every person accused of a criminal offense is entitled to a day in court. This is a fundamental constitutional right, finding its original source imbedded in the common law. If the defendant pleads guilty, this action on his part constitutes a conviction. In fact, it is a conviction of the highest order. If he does not plead guilty, but stands trial and is convicted, he is entitled to one appeal. This is not a constitutional right, but is accorded to him by statute. Beyond that, there is no further right of review. There must be an end to litigation.

■ Writs of *habeas corpus* and motions under 28 U.S.C. § 2255 are not additional means of routine review. They are reserved for those few exceptional and unusual situations in which it appears that the court lacked or lost jurisdiction, or that the defendant was deprived of fundamental and substantial constitutional rights.[1] This is peculiarly true in cases in which the defendant has pleaded guilty. "Like a verdict of a jury it [the plea] is conclusive", Kercheval v. United States, 274 U.S. 220, 223, 47 S. Ct. 582, 583, 71 L.Ed. 1009; United States v. Miller, 2 Cir., 254 F.2d 523. "Even a layman should expect a plea of guilty to be treated as an honest confession of guilt and a waiver of all defenses known and unknown", Edwards v.

1. These principles were elaborately discussed in considerable detail in United States v. Edwards, D.C., 152 F.Supp. 179, affirmed 103 U.S.App.D.C. 152, 256 F.2d 707, certiorari denied 358 U.S. 847, 79 S.Ct. 74.

United States, 103 U.S.App.D.C. 152, 256 F.2d 707, 709.

Counsel for the defendant, realizing the force of these principles, argued that the manner in which the plea of guilty was accepted by the presiding judge in this instance deprived the defendant of his constitutional rights. He does not make it clear, however, of what constitutional rights he claims the defendant was shorn, or in what manner this deprivation took place. As a matter of fact, the record affirmatively demonstrates the contrary. At arraignment the defendant indicated that he desired to plead guilty. The Court had the right to accept the plea at that time, for pleas of guilty are frequently entered without the advice of counsel, perhaps more so in some other districts than in this jurisdiction. In this instance, the Court in its commendable zeal to safeguard the interests of the defendant and to make certain that he was not doing anything improvident, declined to accept the plea of guilty at that stage, and designated counsel to confer with him, because he had indicated that he was without funds. It was only after a conference between the defendant and counsel and after an appropriate statement made by counsel in defendant's presence in open court, that the judge accepted the plea. What more could have been done to protect his rights does not appear. Actually it might have proven prejudicial to the defendant if the Court had declined to accept the plea of guilty, but insisted on entering a plea of not guilty for him and on his standing trial, because in that event he might have received a much more severe sentence than was actually imposed on the plea of guilty.

Pleas of guilty should be neither hindered nor discouraged. It is in accordance with natural justice, that the accused should be permitted, and even encouraged to plead guilty, if he freely admits his guilt. From his standpoint, a benefit may be gained by way of some leniency. From the standpoint of the Government, an advantage may be derived by avoiding the time and expense of a trial. In all courts, both Federal and State, a great majority of criminal cases are disposed of on pleas of guilty. If every criminal case had to be tried, the number of judges would have to be multiplied manifold.

In addition to relying on 28 U.S. C. § 2255, counsel for the defendant seeks to invoke Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. A., which empowers the Court in its discretion to permit a defendant to withdraw his plea even after conviction. This authority, however, is subject to the express limitation that it may be exercised only "to correct manifest injustice". No injustice appears here. The plea of guilty was deliberately entered after consultation with counsel. The defendant does not contend that he was misled into entering the plea, or that any improper pressure was brought to bear upon him to do so. He does not claim that he was innocent. What injustice may be lurking in the acceptance of the plea, therefore, or in the final disposition of the case is not discernible.

The following discussion of Chief Judge Albert Lee Stephens of the Ninth Circuit, in a somewhat similar case, Reese v. Dickson, 253 F.2d 670, 671, is impressive and pertinent:

"Of course, the objective of our legal criminal procedure is the ascertainment of guilt or innocence, and the safeguards to such objective known as 'due process' must be observed. Yet the objective remains and should never change to a microscopic search for error upon a standard too strict to be understood or put in action only by technicians. It may be of some little significance and some, though small, comfort to those of us whose duty calls us to act in this regrettable business, that in petitioner's long and carefully self-prepared petition, there is not to be found a claim of innocence in addition to his formal plea of not guilty."

While, obviously, lapse of time does not necessarily bar an assertion of con-

stitutional rights, nevertheless, the long interval that has ensued since the imposition of sentence casts a doubt on the good faith of the present application. Moreover, it would be a gross injustice to the public, in fact it would be stultifying, to set aside the conviction after these many years, and to require the Government to prove its case at this time. It is entirely conceivable that the Government could not do so because some of the witnesses may have moved away or disappeared, while the memory of others may have partially faded so that they may be unable to withstand cross-examination. The public is entitled to be protected against the depredations of the defendant and his ilk. The basic constitutional right of every person is to be let alone and not to be molested. The defendant has violated this fundamental right of his innocent victims.

 It is also argued that the judge presiding at the arraignment failed to comply with Rule 11 of the Federal Rules of Criminal Procedure, which provides that the court shall not accept a plea of guilty "without first determining that the plea is made voluntarily with understanding of the nature of the charge". A violation of a mere rule of practice does not necessarily result in a deprivation of constitutional rights and, therefore, such a transgression, even if it existed, is not, in and of itself, sufficient to justify the granting of a motion under 28 U.S.C. § 2255. Actually, however, the record in this case conclusively demonstrates that the judge carefully complied with this directive. For this purpose the Court appointed counsel to confer with the defendant, and after the conference counsel made a statement in open court in the defendant's presence from which the conclusion is irresistible that the defendant was entering his plea voluntarily, that he understood the nature of the charge, and that he admitted his guilt. The rule cannot be construed as requiring the Court personally to question the defendant in each instance and to perform a set ceremonial. The Court may always rely on representations of counsel. This is the function of counsel. Members of the bar have a right to expect their statements to be taken by the Court at their face value until and unless the contrary appears. The rule is complied with in spirit whenever the Court designates counsel who, after conference with the defendant, makes a statement from which the Court draws the inference that the defendant has pleaded guilty voluntarily after understanding the nature of the charge. It is indeed true that there are times when the Court personally interrogates a defendant under such circumstances even if he is represented by counsel. The purpose of such an interrogation is merely to prevent the defendant from later claiming that he was misled, or that pressure had been brought to bear upon him, as well as to protect counsel against an attack by his client at some future time. There is no rule of law or practice requiring the Court to conduct such interrogation personally.

The conclusion is inescapable that on the basis of the files and records of this Court, as well as the affidavits and testimony, and other material submitted at the hearing, the present motion is entirely lacking in merit. The Court finds the facts as stated in this opinion. No deprivation of constitutional rights and no injustice to the defendant can be perceived.

It is to be deplored that in his oral argument, counsel for the defendant chose to use extravagantly and improvidently critical language in respect to the proceedings before the judge who conducted the arraignment. This course is not in accordance with the standards of urbanity, courtesy and respect for the Court that guides and governs the conduct of members of the bar, for it must be remembered that the bar is a profession of gentlemen. It would have been just as effective, although of course equally erroneous, to have said something to the effect that, it is submitted that inadvertently the defendant was not accord-

ed his constitutional rights, instead of using the vehement, lurid phraseology that was actually employed. Hollow professions that no reflection on the judge or prior counsel is intended, are not convincing if the words actually used contradict this protestation. I have no hesitancy in making this observation, since counsel's comments referred to another judge of this Court and not to me.

It might be useful in this connection to summarize the duties and rights of counsel in connection with representing defendants in criminal cases. It is, of course, elementary that it is ethical for a member of the bar to represent the accused even if he knows the latter to be guilty. In fact, it may be on occasion an ethical duty to do so, especially when it is undertaken by assignment of the Court. This is necessarily true because every defendant in a criminal case is entitled to be represented by counsel and the trial cannot proceed without counsel unless this privilege is affirmatively waived.[2]

There are certain inherent limitations, however, on counsel who represents a defendant whom he knows to be guilty: there must be no relation between them except purely that of attorney and client; counsel must retain control of the presentation of the case and neither the client nor any outside person may dictate to him how to conduct the case in court; and counsel may not tender any evidence, or make any statements that he knows to be false as a matter of fact. None of these limitations is involved in this instance. There is a further qualification, however. No counsel is under any obligation to advance or present arguments or points that are obviously specious, or frivolous. Counsel is not expected to stultify himself in an attempt to advance his client's

interests. In fact the Supreme Court has stated that if counsel is convinced that an appeal is "frivolous, of course, he may ask to withdraw on that account", Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 975, 2 L.Ed.2d 1060. A fortiori he is under no obligation to press a frivolous motion under 28 U.S.C. § 2255.

The present Federal Rules of Criminal Procedure were adopted in 1946 in order to do away with technicalities and hairsplitting refinements or distinctions that were no credit to the law or to the administration of justice. This basic philosophy of the new procedure is clearly enunciated in Rule 2 and Rule 52(a) of the Federal Rules of Criminal Procedure. Rule 2 reads as follows:

"Rule 2. *Purpose and Construction.* These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

Rule 52(a) reads as follows:

"(a) *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Anglo-American jurisprudence provides certain safeguards for the purpose of preventing the possibility of a conviction of the innocent, or oppressive treatment even of the guilty. These safeguards must be carefully observed even if occasionally they permit a criminal to slip through the meshes. On the other hand, sheer casuistic, captious technicalities that can be of no assistance to the innocent, but that may result in turning miscreants loose unwhipped of justice and to that extent have an adverse effect on the protection of the public,

---

2. In this connection it may be of interest to compare the views of the American bar and the English bar on this point. In England a barrister is under an ethical obligation to accept every retainer tendered to him by a solicitor provided his fee is paid in advance. See W. W.

Boulton, Conduct and Etiquette at the Bar, p. 33. On the other hand, in the United States, a member of the bar is at liberty to accept or decline a tender of a retainer. See Canon 31 of the American Bar Association Code of Ethics.

have no place in modern jurisprudence. This fundamental philosophy was eloquently formulated by two of the greatest jurists of our times, each of whom has been known as a strong defender of individual liberty. Judge Learned Hand in United States v. Garsson, D.C., 291 F. 646, 649, made the following statement:

"Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve * * * Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays, and defeats the prosecution of crime."

Mr. Justice Cardozo, in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674, made the following observation:

" * * * justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

This court has reviewed the various aspects of this application at greater length than its lack of merits perhaps justifies, but this course has been followed in view of the voluminous brief submitted and the lengthy oral argument presented by counsel.

In conclusion it is well to bear in mind Lord Acton's sage observation that "liberty and good government do not exclude each other".[3]

Motion to vacate judgment and sentence is denied.

3. Lord Acton—The History of Freedom in Antiquity.