## STATE OF HAWAII
### *v.*
## FRANK OSCAR McCOY, ET AL.

### No. 4762.

DECEMBER 24, 1968.

RICHARDSON, C.J., MARUMOTO, ABE AND LEVINSON, JJ., AND CIRCUIT JUDGE KING ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY RICHARDSON, C.J.

On the second day of jury selection, the trial court gave defendant-appellant leave to change his plea of not guilty to two counts of robbery in the first degree to guilty to two counts of robbery in the second degree. Three weeks later and prior to sentencing, defendant requested leave to withdraw his plea, claiming involuntariness due to fear of retaliation by his co-defendants if he did not so plead, but the court denied the motion. The sole question presented by this appeal is whether the trial court abused its discretion when it denied defendant leave to withdraw his plea of guilty so that he could proceed to trial on the original charges.

A plea of guilty effectually waives defendant's constitutional right to a speedy and public trial by an impartial jury. *Kercheval* v. *United States,* 274 U.S. 220 (1927). H.R.Cr.P. 32(d) permits the trial court to allow withdrawal of the plea to correct "manifest injustice." An accused's right to trial by jury is of paramount importance and he is entitled to competent counsel at a proceeding wherein he waives his right and should be instructed as to his rights and the consequences thereof. Furthermore, every effort should be made to insure the voluntariness of defendant's decision to plead guilty.

We have examined the record and find no abuse of discretion by the trial judge. Defendant was at all times represented by counsel and was given the opportunity to confer with counsel. The trial court specifically instructed the defendant as to his rights and inquired into the understanding of defendant as to the consequences of his decision:

THE COURT: How old are you?

THE DEFENDANT: (McCoy) Thirty-nine.

Q Thirty-nine?

A Yes.

Q How much schooling have you had?

A Seventh grade.

Q Do you understand what the government has done?

A Yes.

Q It has reduced the charge of robbery in the first degree to robbery in the second degree. Do you understand that?

A Yes, sir.

Q And there are two counts against you—do you understand that?

A Yes, sir.

Q Have you discussed this matter with your attor-

ney as to pleading to the reduced charge?

A    Yes, sir.

Q    And he has advised you, is that correct?

A    Yes, sir.

Q    And you understand his advice, is that correct?

A    Yes, sir.

Q    Do you know the maximum punishment for robbery in the second degree?

A    Yes, sir.

Q    How many years?

A    Twenty years.

Q    For each count, do you understand that?

A    Yes, sir.

Q    And you also understand that the court could run those years consecutively making it a total of forty years?

A    Yes, sir.

Q    You have given your attorney all the facts concerning your case, is that correct?

A    Yes, sir.

Q    And he has advised you as to any possible defenses you may have, is that correct?

A    Yes, sir.

Q    And you understand that no matter what the facts are you are entitled to a trial—you understand that?

A    Yes, sir.

Q    Have you very [sic] been confined in a mental institution?

A    No.

Q    Have you ever been treated for any mental disease or disorder?

A    No.

Q    Are you now sick or under the influence of drugs?

A  I was sick but not under the influence of drugs.

Q  What type of illness are you now—?

A  Diabetic.

Q  You are diabetic. You are under a doctor's care, is that correct?

A  Yes, sir.

Q  And you have been receiving treatment while in prison?

A  Yes, sir.

Q  Have you taken any pills or any medication today?

A  Yes, sir.

Q  What kind of medication?

A  I don't know what they call it but it is supposed to help my diabetic.

Q  You have been taking these over a period of time, and these are prescribed by your physician in the State Prison, is that correct?

A  Yes, sir.

Q  You are confined in the State Prison?

A  Yes, sir.

Q  For the offense you committed before, is that correct?

A  Yes, sir.

Q  Have you any complaints about the treatment in prison?

A  No.

The court also inquired as to the presence of any external pressures, including bargaining pressures by the prosecutor:

Q  Any pressure brought upon you to plead guilty?

A  No.

Q  Anyone promised you leniency if you were to plead guilty?

A  No.

Q   Was any deal offered you to plead guilty?

A   No.

The court further inquired into the role played by defendant's attorney:

Q   You believe your attorney has done all that he can for you?

A   Yes, sir.

Q   Do you have any complaints against your attorney?

A   No.

And lastly, the court asked for the admission of guilt or innocence:

Q   Do you claim to be innocent of the charges?

A   No.

The trial court further conferred with defendant's attorney to determine whether there was any misunderstanding.

Defendant now claims that he made the plea under pressure of fear that if he didn't, the co-defendants would bring acts of retaliation against him. But the record provides ample evidence to support the trial court's finding that the plea of guilty was given voluntarily and with knowledge and understanding of defendant's rights. Lacking any further evidence to indicate a miscarriage of justice, we find no abuse of discretion.

Affirmed.

*Kazuo Oyama* for defendant-appellant.

*Barry J. Rubin,* Deputy Prosecuting Attorney (*John H. Peters,* Prosecuting Attorney, with him on the brief) for plaintiff-appellee.