WILLIAM LINO RUSSELL, Petitioner-Appellant, *v.* OLIN G. BLACKWELL, WARDEN U. S. PENITENTIARY, Respondent-Appellee

No. 5032

January 3, 1972

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND MENOR, CIRCUIT JUDGE, FOR KOBAYASHI, J., DISQUALIFIED

OPINION OF THE COURT BY RICHARDSON, C.J.

The broad question in this case is whether the Circuit Court wrongfully denied petitioner Russell's application for writ of habeas corpus. We hold that the Circuit Court properly denied petitioner's application for habeas corpus relief and petitioner's request for an evidentiary hearing on the merits of his application.

William Russell was charged in 1964 with murder in the first degree and robbery in the second degree. In June, 1964, Michael Byrne was appointed counsel for petitioner for both charges. On July 2, 1964, in the Circuit Court, petitioner Russell pleaded not guilty to both charges and demanded a trial by jury. On May 7, 1965, petitioner appeared in court with his counsel who indicated to the court that petitioner Russell wished to withdraw his plea of not guilty and plead anew. In response to questions by the court, petitioner pleaded guilty to murder in the first degree and nolo contendere to robbery in the second degree.[1] The

---

[1]The following is the record in pertinent part of what transpired when petitioner entered his guilty pleas:

THE CLERK: Criminal No. 34802, State of Hawaii versus William Lino Russell. Murder in the First Degree.

MR. BYRNE: If the Court pleases, as I understand in Criminal No. 34802, the defendent William Lino Russell, let' the record indicate he is in court with attorney. At this time, your Honor, we wish to withdraw our previous plea of not guilty and plead anew.

THE COURT: Very well.

William Lino Russell, how do you plead to the charge of Murder in the First Degree?

DEFENDANT RUSSELL: Guilty.

THE COURT: Your plea of guilty will be entered and upon the entry of such plea, I find and adjudge you guilty as charged. You will be sentenced to serve a life imprisonment in Oahu Prison at hard labor without parole; the prison authorities, however, will have the right to transfer you to a mainland penitentiary. Mittimus to issue; forthwith.

THE CLERK: Criminal No. 34803, State of Hawaii versus William Lino Russell, Robbery in the Second Degree.

MR. BYRNE: If the Court pleases, with reference to that charge, we wish to withdraw our previous plea of not guilty and plead anew.

THE COURT: William Lino Russell, how do you plead to the charge of Robbery in the Second Degree?

DEFENDANT RUSSELL: Nolo contendere.

court accepted petitioner's guilty pleas and found him guilty as charged. For the murder conviction, petitioner was sentenced to serve a life imprisonment at hard labor without parole, and twenty years' imprisonment for the robbery conviction.

On May 7, 1969, petitioner Russell filed in the Circuit Court of the First Circuit, a handwritten petition for writ of habeas corpus, requesting the court to allow him to withdraw his pleas of guilty. He alleged that his 1965 pleas of guilty were not entered voluntarily and understandingly because a confession had been forced from him by the police who had beaten him about the head and shoulders; and on the day he entered his guilty pleas he had been taking drugs which fact rendered him "non compos mentis" at the time of his pleas.[2]

---

THE COURT: Your plea of nolo contendere will be entered and upon the entry of such plea, I find and adjudge you guilty as charged. I will sentence you to serve fifty years at hard labor in Oahu Prison, to run concurrently with any sentence you are now serving. Mittimus to issue, forthwith. Again, the prison authorities will have the right to transfer you to a mainland penitentiary.

MR. BYRNE: If the Court pleases, the sentence that your Honor has reference to, the sentence that he is serving now, that is, the Burglary in the First Degree, the Forgery, the Escape and Retake on Parole Violation and other perhaps offenses that I don't know about, all are to run concurrently?

THE COURT: Right. At least these two are to run concurrently with any sentence he is now serving; I have no authority on the others.

MR. BYRNE: Thank you very much.

THE COURT: Mittimus to issue, forthwith, on each count.

Just a minute, Mr. Byrne. Would you and Mr. Russell come back here again? I will revoke the sentence on Criminal 34803, Robbery Second; I understand that I was in error, that the maximum is twenty years.

MR. BYRNE: That is correct, Sir.

THE COURT: So the sentence will be twenty years, to run concurrently with Criminal 34802 and any other sentence under which you are now serving. Mittimus to issue, forthwith.

MR. BYRNE: Thank you, your Honor.

THE COURT: Very well.

[2]Petitioner claimed he took barbiturates, seconal and an analgesic, sodium silicylate, which was prescribed by the prison doctor.

## A.

The first issue presented is whether the court in accepting petitioner Russell's pleas of guilty in 1965 complied with Rule 11 of the Hawaii Rules of Criminal Procedure. Resolution of this problem turns on whether retroactive effect will be given to *Boykin v. Alabama*, 395 U.S. 238 (1969) which held that state courts may not assume from a silent record that a guilty plea had been voluntarily made.

It is our conclusion that *Boykin* shall not be applied retroactively. The Federal Constitution "neither prohibits nor requires retrospective effect." *Linkletter v. Walker*, 381 U.S. 618, 629 (1965).[3] However, in *Linkletter*, the Supreme Court articulated guides which may be employed in determining whether a decision is to be given retroactive effect. Factors to be considered include: Prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation; interests in the administration of justice and the integrity of the judicial process.

The first consideration is whether retroactive operation will further or retard the rule in *Boykin*. Rule 11 of the Federal Rules of Criminal Procedure was designed to assist the judge in making the determination that a defendant's guilty plea is voluntary. In addition, the rule was intended to produce a record of the guilty plea relevant to the voluntariness determination in order to expeditiously dispose of the frivolous post-conviction attacks on the validity of guilty pleas. Clearly, retroactive operation of *Boykin* will not serve to further these intended purposes of Rule 11 of the Federal Rules of Criminal Procedure.

A further consideration is the impact of retroactive application of *Boykin* on the administration of justice. To make the rule of *Boykin* retroactive would impose an awesome burden on the administration of justice. The Supreme Court

---

[3]In *Linkletter*, the Supreme Court held that the Federal Constitution does not require that Mapp v. Ohio, 367 U.S. 643 (1961) be applied retroactively.

of California stated in *In re Tahl*, 1 Cal. 3d 122, 81 Cal. Rptr. 577, 460 P.2d 449 (1969): "To invalidate all such prior guilty pleas years and decades after their acceptance would have a dolorous effect upon the administration of justice. In light of these combined legal and pragmatic factors, we believe *Boykin v. Alabama* and the procedures adopted herein must be given prospective application only, *i. e.*, to those cases in which pleas were entered subsequent to the effective date of that decision." *See Johnson v. New Jersey*, 384 U.S. 719 (1966)[4] in which case the Supreme Court declined to apply retroactively *Escobedo v. Illinois*, 378 U.S. 478 (1964) and *Miranda v. Arizona*, 384 U.S. 436 (1966). Instructive also is *Halliday v. United States*, 394 U.S. 831 (1969) in which case the Supreme Court refused to afford retroactive application to *McCarthy v. United States*, 394 U.S. 459 (1969) which established federal guidelines regarding acceptance of guilty pleas. The Supreme Court in *McCarthy* held that failure to comply with Rule 11 of the Federal Rules of Criminal Procedure necessitated that the guilty plea be set aside. In denying *McCarthy* retroactivity, the Court in *Halliday* stated at 833:

 . . . In *McCarthy* we noted that the practice we were requiring had been previously followed by only one Circuit; that over 85% of all convictions in the federal courts are obtained pursuant to guilty pleas; and that prior to Rule 11's recent amendment, not all district judges personally questioned defendants before accepting their guilty pleas. Thus, in view of the general application of Rule 11 in a manner inconsistent with our holding in *McCarthy*, and in view of the large number of constitutionally valid convictions that may have been obtained without full com-

---

[4]The Supreme Court in Johnson v. New Jersey noted that confessions lacking *Miranda* warnings were not necessarily involuntary but that such warnings provided new safeguards against coerced confessions. Likewise, the absence of *Boykin* inquiries does not necessarily render a guilty plea involuntary, and the new safeguards established by *Boykin* may be fairly applied prospectively only.

pliance with Rule 11, we decline to apply *McCarthy* retro-actively. We hold that only those defendants whose guilty pleas were accepted after April 2, 1969, are entitled to plead anew if their pleas were accepted without full compliance with Rule 11.[5]

A residual question is whether this court is required to give retroactive effect to *Boykin* because of our holding in *Wong v. Among*, 52 Haw. 420, 477 P.2d 630 (1970) which cited *Boykin* as authority in a footnote.[6] *Wong* is inapposite and thus does not compel this court to afford *Boykin* retroactive application. The governing distinguishing factor in *Wong* is that petitioner Wong was not represented by counsel throughout the criminal proceedings including when he entered his pleas of guilty. The salient facts in *Wong* were that petitioner Wong was not advised of his right to counsel, was without the services of counsel and consequently did not understand what was happening throughout all of the proceedings in which he pleaded guilty. In addition, the court record was absolutely silent as to whether Wong voluntarily and understandingly waived his right to counsel when he pleaded guilty.[7]

[5]It should be noted that the decision in *McCarthy* did not affect the procedure in accepting guilty pleas in state courts, since *McCarthy*. was decided pursuant to the Supreme Court's supervisory powers over the lower federal courts without reaching the constitutional issues raised. Consequently, the decision in *Halliday* is not dispositive of the instant case but is referred to for guidance.

[6]The pertinent language in *Wong*, citations omitted, is as follows:

The special master found that the petitioner did not understand what was happening during all of the proceedings wherein he entered his pleas of guilty; that his pleas were entered without the assistance of counsel. The official record is silent and where it is silent the presumption is that the petitioner did not voluntarily and understandingly enter his pleas of guilty. Since no justification for a guilty plea can be inferred from a silent record we hold that the respondents had the burden of proving the validity of petitioner's pleas of guilty.

[7]The court found the following facts to be controlling:

The special master has made, *inter alia*, the following findings of fact that are dispositive of this case:

(1) In the year 1953 the petitioner was charged with the following offenses: burglary in the first degree, Cr. No. 26063; robbery in the first

That the advice and presence of counsel weigh heavily in ascertaining the voluntariness of a plea, is unquestionable. The "fact that the [defendant] was represented by counsel and acted after consultation with counsel is . . . to be given substantial weight in determining the voluntariness of plea." *United States ex rel. Ross v. McMann,* 409 F.2d 1016, 1021 (2d Cir. 1969). *See also McMann v. Richardson,* 397 U.S. 759, 767 (1970); *In re Tahl,* 1 Cal. 3d 122, 81 Cal. Rptr. 577, 460 P.2d 449, 452-54 (1969)[8]; *State v. McCoy,* 51 Haw. 34, 449 P.2d 127, 129 (1968); *Nunley v. United States,* 294 F.2d 579, 580 (10th Cir. 1961), *cert. denied,* 368 U.S. 991 (1962). Hence, the fact that petitioner Russell entered his plea of guilty in 1965 in presence of and after consultation with his attorney not only is probative in determining the voluntary nature of his plea but renders *Wong* inapplicable to the instant case and nondeterminative in directing this court to give retroactive effect to *Boykin.*

degree, Cr. No. 26116; and forgery and passing a forged writing, Cr. No. 26147;

(2) Petitioner was without the services of counsel during all of the arraignments of the offenses; that petitioner was not able to afford retained counsel;

(3) Petitioner was without the services of counsel when he entered the pleas of guilty against all charges;

(4) Petitioner was unaware of the meaning of any of the charges made against him;

(5) Petitioner did not understand what was happening during all of the proceedings in which he plead [sic] guilty. Petitioner was also confused and did not understand the sentencing procedure;

(6) Petitioner was not advised of nor understood his right to counsel, right not to incriminate himself, right to jury, and right to confront witnesses;

(7) A portion of the official record, the court reporter's shorthand notebooks relating to the proceedings against petitioner, was destroyed in 1958 pursuant to a records disposition authorization under HRS § 94-3;

(8) The available portion of the court record pertinent to the charges against petitioner are absolutely silent on whether petitioner voluntarily and intelligently waived his right to counsel when he plead [sic] guilty to all of the pertinent charges against him.

[8]The reasoning employed by the court in In re Tahl, *supra* at 453-54, citations omitted, is persuasive:

Thus the crucial factor has generally been the presence of counsel. In

Since we have concluded that *Boykin* shall not be applied retroactively, the next step is to determine whether the Circuit Court in accepting petitioner Russell's plea of guilty in 1965 complied with the then prevailing standards of Rule 11 of the Hawaii Rules of Criminal Procedure. It is our belief that the then requisite standards of Rule 11 of the Hawaii Rules of Criminal Procedure were met when petitioner entered his guilty pleas in 1965. The applicable standard of Rule 11 required the court to determine that the plea was "made voluntarily with understanding of the nature of the charge."[9] The court was not duty bound to personally question defendants before accepting their guilty pleas,[10] although in retrospect such questioning for purposes of determining the voluntariness of the guilty pleas would have been the preferable *modus operandi.* Compliance with Rule 11 did not require a ritualistic ceremonial performed by the judge who conducted a personal interrogation of the defendant. "The rule [federal Rule 11] cannot be construed as requiring the Court personally to question the defendant in each instance and to perform a set ceremonial. The Court may always rely on representations of counsel. This is the function of counsel. . . . The rule is complied with in spirit

a capital case California law does not allow a plea of guilty without counsel; and for lesser offenses counsel must be clearly and expressly waived, a provision our courts scrupulously enforce. It is for good reason that the prerequisites for acceptance of a guilty plea are far less precise when counsel is present than when he is not, and the rules regarding waiver of counsel are more stringent than those regarding waiver of most other rights. If an accused has counsel, courts have generally assumed, in the absence of evidence to the contrary, counsel will perform his duty as an advocate and an officer of the court to inform the accused of and take steps to protect the other rights afforded by the law; whereas if he is without counsel courts have not assumed, again in the absence of a clear showing to the contrary, that the accused will be "sufficiently articulate and adequately conversant with his constitutional and legal rights and his procedural duties to protect himself throughout the course of criminal proceedings." Thus the California rule has been stated as follows: "The court must inform the defendant of his right to counsel, but need not inform him of the consequences of his plea; that is the responsibility of his counsel, not the court."

[9]Rule 11 of the Hawaii Rules of Criminal Procedure states:

whenever the Court designates counsel who, after conference with the defendant, makes a statement from which the Court draws the inference that the defendant has pleaded guilty voluntarily after understanding the nature of the charge." *United States v. Von Der Heide*, 169 F. Supp. 560, 566 (D.D.C. 1959). *See also Meeks v. United States*, 298 F.2d 204 (5th Cir. 1962) and *Nunley v. United States*, 294 F.2d 579, 580 (10th Cir. 1961), *cert. denied*, 368 U.S. 991 (1962). This procedure would be impermissible in federal courts after the 1966 amendments to federal Rule 11 and *McCarthy v. United States*, 394 U.S. 459 (1969) as well as in state courts after *Boykin v. Alabama*, 395 U.S. 238 (1969). *Boykin* provided new safeguards that guilty pleas made in state courts would be genuinely voluntary. However, thorough examination of petitioner Russell's record below convinces us that his pleas were entered voluntarily and understandingly and accepted by the court in 1965 in compliance with the then existing standards.

## B.

The second issue is whether the Circuit Court erred in its ruling that petitioner Russell by reason of his guilty pleas

---

A defendant shall be apprised of his right to counsel before plea. He may then plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

[10]We know of no Hawaii case authority which clearly articulates this standard. However, this position is buttressed by decisions in the federal courts which have interpreted Rule 11 of the Federal Rules of Criminal Procedure prior to the 1966 amendments to Rule 11. The Supreme Court in Halliday v. United States, 394 U.S. 831, 833 (1969) acknowledged the validity of the practice "that prior to Rule 11's recent amendment, not all district judges personally questioned defendants before accepting their guilty pleas." For purposes of determining the procedural standard governing acceptance of petitioner Russell's guilty pleas, the standard of federal Rule 11 prior to its 1966 amendments is sought for guidance because Rule 11 of the Hawaii Rules in effect in 1965 was in substance identical to federal Rule 11 prior to its 1966 amendments.

waived his right to question the voluntariness of his prior confession. We believe the Circuit Court ruled correctly.

This precise question was settled by *McMann v. Richardson*, 397 U.S. 759 (1970). In *McMann, supra* at 760, the principal issue was "whether and to what extent an otherwise valid guilty plea may be impeached in collateral proceedings by assertions or proof that the plea was motivated by a prior coerced confession." In *McMann*, each of the three petitioners had entered guilty pleas in state court. Each, subsequently, challenged the validity of his guilty pleas in state court. Each petitioner's application for collateral relief in state court was denied without hearing. Habeas corpus relief was then sought in federal courts. In each case, the district court denied relief without an evidentiary hearing. The Court of Appeals for the Second Circuit reversed and directed that a hearing be held in each case on the petition for habeas corpus. The Supreme Court reversed and held that "a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus." The Court perceived the problem to be "not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof." *McMann, supra* at 773. In denying petitioner's relief the Court reasoned:

A more credible explanation for a plea of guilty by a defendant who would go to trial except for his prior confession is his prediction that the law will permit his admissions to be used against him by the trier of fact. At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. Nothing in this train of events suggests that the defendant's plea, as dis-

tinguished from his confession, is an involuntary act. His later petition for collateral relief asserting that a *coerced* confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable.

## C.

The final question is whether there was any legal basis for the Circuit Court's denial of petitioner's request for an evidentiary hearing on petitioner's claim that he was under the influence of drugs at the time of his guilty plea. We believe the Circuit Court's denial was proper.

HRS § 660-27 does not afford all habeas corpus petitioners an absolute right to a hearing. *See Mullins v. Page*, 448 P.2d 300, 301 (Okla. 1968); *In re Schlette*, 42 Cal. Rptr. 708, 712-14 (1965). Even if the petitioner alleges facts which, if true, would establish the illegality of his convictions, it is the trial judge's function, consistent with the discretion afforded him in HRS § 660-3 and with the spirit of the summary nature of HRS § 660-27, to determine whether a full hearing is necessary. A petitioner for habeas corpus relief whose allegation is patently improbable is not entitled to an evidentiary hearing. *In re Tahl*, 1 Cal. 3d 122, 81 Cal. Rptr. 577, 460 P.2d 449, 458-59 (1969); *Young Hee Choy v. United States*, 344 F.2d 126-128 (9th Cir. 1965). Trial judges are not stripped "of all discretion to exercise their common sense" to deny a request for an evidentiary hearing when the record reveals that petitioner's allegations are "vague, conclusory or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1961).[11] An examination

---

[11]It should be noted that *Machibroda* establishes procedural guidelines for the federal courts under the federal habeas corpus statute which does not require conformity by states.

of petitioner Russell's record indicates that the circuit judge had firm reason for concluding that petitioner's allegation was patently improbable and provided no basis for an evidentiary hearing. The court found that the record did not support petitioner's claim that he had access to drugs. In addition, nothing in the record shows that petitioner was less than fully alert and conscious when he entered his pleas of guilty. Finally, petitioner offered no explanation for the long delay in excess of five years in moving to withdraw his pleas of guilty. It approaches the incredible that one would enter pleas of guilty unknowingly and involuntarily by reason of ingestion of drugs allow the conviction to stand after return to clarity of mind and spend years imprisoned before even attempting to challenge the voluntariness of his pleas. *See In re Shipp,* 43 Cal. Rptr. 3, 399 P.2d 571, 577 (1965); *In re Johnson,* 53 Cal. Rptr. 1, 6 (1966).

Affirmed.

*James Blanchfield,* Deputy Public Defender (*Brook Hart,* Public Defender, and *Andrea Levin,* Deputy Public Defender with him on the briefs) for appellant.

*E. John McConnell, Jr.,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, with him on the brief) for appellee.

DISSENTING OPINION OF LEVINSON, J.

I dissent.

This appeal reaches us from the denial by the circuit court of petitioner Russell's application for a writ of habeas corpus. The petitioner, a prisoner incarcerated in the federal penitentiary at Atlanta, Georgia, raises essentially two issues: (1) Is the availability of habeas corpus relief in a court of this state contingent upon the possibility of immediate release from confinement? (2) If such relief is not so contingent, is the petitioner entitled to an evidentiary hearing, an opportunity to amend his petition, and the assistance of counsel, pursuant to his claim that his confinement arising out of two state court convictions is in violation of

his rights under the due process clause of the fourteenth amendment of the Federal Constitution? Specifically, he alleges that his pleas of guilty and nolo contendere to charges of first degree murder and second degree robbery were not entered voluntarily and understandingly and that, prior to his abandonment of pleas of not guilty, a coerced confession was extracted from him by the police.

In 1964, the petitioner was charged with first degree murder and second degree robbery, and he was provided with court-appointed counsel. He pleaded not guilty to both charges and demanded a jury trial on July 2, 1964. After a series of postponements, he next appeared before a circuit court judge on May 7, 1965, at which time his counsel indicated that the petitioner wished to withdraw his previous pleas and plead anew. In response to the twice-uttered incantation, "William Lino Russell, how do you plead?" the petitioner entered pleas of guilty and nolo contendere, respectively, to the murder and robbery charges. He was sentenced to the mandatory term of life imprisonment without parole[1] on the former count and a term of twenty years on the latter, the sentence to run concurrently with any he was then serving.[2] The petitioner was subsequently transferred from the Hawaii State Prison to the federal penitentiary at McNeill Island, Washington, and thence to the federal institution at Atlanta, Georgia. He is, in addition, being incarcerated for three previous state convictions involving sentences which have not yet expired. The petitioner does not challenge these convictions. In June, 1968, the petitioner was also convicted by a federal district court of a federal offense for which he was sentenced to 15 years imprisonment, to be served consecutively with the life sentence. This, too, he does not challenge.

On May 7, 1969, the petitioner filed an application in the

---

[1] HRS § 748-4.

[2] The judge initially sentenced the petitioner to a term of fifty years on the robbery count, but, apparently correcting his own error, reduced the sentence to the statutory maximum of twenty years. HRS § 765-11.

circuit court for a writ of habeas corpus and for leave to proceed *in forma pauperis.* In his application, the petitioner alleged, somewhat ambiguously, that during his stay at the Honolulu police station, prior to his transfer to the Hawaii State Prison on June 8, 1964, he was beaten about the head and shoulders by the police, in an effort to obtain a confession from him. He further alleged that during his incarceration at the Hawaii State Prison he had had access to barbiturates, and that, for a period surrounding his entry of the pleas of guilty and nolo contendere, he had in fact taken daily doses of seconal and was consequently "non compos mentis" at the time the pleas were entered. Thus, he alleged that his guilty and nolo contendere pleas were entered in contravention of H.R.Cr.P., Rule 11, requiring that a court shall not accept a plea that is not made voluntarily with understanding of the nature of the charges.[3] Invoking H.R.Cr.P., Rule 32(d)[4], the petitioner requested that the court permit him to withdraw his guilty pleas as to both counts. The petitioner concluded by reminding the court that "Applicant is not an attorney" and by asking "the Court to overlook any mistakes in this application." The petition was accompanied by an affidavit in which the petitioner prayed for a hearing whereby he could prove his allegations, being unable to obtain affidavits from witnesses at the Hawaii State Prison "for lack of correspondence." In a subsequent Motion for Subpoenas, filed October 2, 1969, the

---

[3]Rule 11 provides that:

A defendant shall be apprised of his right to counsel before plea. He may then plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

[4]Rule 32(d) provides that:

A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

petitioner named the individuals without whose testimony "petitioner cannot safely prove his allegations."[5] A Memorandum in Opposition to the petitioner's application was filed by the State Attorney General on November 17, 1969; it contained prison records which indicated that the petitioner had been segregated from the general inmate population at the Hawaii State Prison and that "[t]here is nothing in our records or elsewhere that shows he was under the influence of drugs."

On July 2, 1970, a circuit court judge denied the petitioner's application for a writ of habeas corpus. The court's order rested upon two grounds, the first being that the impossibility of immediate release from custody on account of another undisputed conviction precluded the petitioner from habeas corpus relief, regardless of the validity of his claims.[6] Second, the court held that "[t]here is nothing in the record to support [the petitioner's] allegation that at the time of pleas he did not understand the nature of the charges or did not make the pleas voluntarily" and that "[w]hen petitioner pleaded guilty, he waived his right to question the voluntariness of the confession."

The petitioner perfected his appeal pursuant to HRS § 602-5 and H.R.C.P. Rules 73 and 81(f). He prays that the lower court's denial of his application be reversed and that the case be remanded with instructions to appoint counsel, allow amendment of the petition, and hold a full evidentiary hearing. I conclude that the petitioner is entitled to the relief he seeks.

### I. HABEAS CORPUS AND THE IMMEDIATE RELEASE RULE

The respondent insists that it is the law of the State of

---

[5] It appears from the record that the petitioner's motion for subpoenas constituted his response to a court order, dated September 5, 1969, allowing the petitioner thirty days within which to file any additional objections to the legality of his restraint.

[6] Although the majority opinion does not discuss the status of the "immediate release rule" in Hawaii, the result that I reach requires that the issue be resolved.

Hawaii "that a habeas corpus petitioner who is incarcerated as a result of unchallenged convictions is properly confined and entitled to no relief."[7] In other words, the respondent argues that the State of Hawaii adheres to the "immediate release rule," of which *McNally v. Hill*, 293 U.S. 131 (1934), was the progenitor. The respondent is incorrect. The United States Supreme Court has recently overruled *McNally* and rejected the applicability of the immediate release rule to petitions for writs of habeas corpus pursuant to 28 U.S.C. § 2241. *Peyton v. Rowe*, 391 U.S. 54 (1968); *Walker v. Wainwright*, 390 U.S. 335 (1968). In *Walker*, the Court declared that:

> Whatever its other functions, the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention. The Petitioner is now serving a life sentence imposed pursuant to a conviction for murder. If, as he contends, that conviction was obtained in violation of the Constitution, then his confinement is unlawful. It is immaterial that *another* prison term might still await him even if he should successfully establish the unconstitutionality of his present imprisonment.

*Walker, supra* at 336-37. Furthermore, the rationale of *Walker v. Wainwright* and *Peyton v. Rowe*, originally applied to prisoners serving consecutive sentences arising out of state convictions, has been extended to consecutive state-federal sentences, *Desmond v. U.S. Board of Parole*, 397 F.2d 386 (1st Cir. 1968), *cert. denied*, 393 U.S. 919 (1968), and to concurrent sentences, where the petitioner, even if successful, would not be entitled to immediate release. *Imbler v. Oliver*, 397 F.2d 277 (9th Cir. 1968); *Lydy v. Beto*, 399 F.2d 59 (5th Cir. 1968); *Rhodus v. Patterson*, 404 F.2d 890 (10th Cir. 1968); *Walker v. Wheeler*, 411 F.2d 468 (6th Cir. 1969).

*Walker v. Wainwright* and *Peyton v. Rowe* involved the

---

[7]Appellee's Answering Brief, at 6.

availability of habeas corpus relief under 28 U.S.C. §§ 2241 et seq. to petitioners not entitled to immediate release from confinement notwithstanding their valid claims. Nevertheless, the policies articulated by the United States Supreme Court are no less forceful or persuasive in relation to our habeas corpus statute, HRS ch. 660. Strict adherence to the immediate release rule, whether by a state or federal court,

> can harm both the prisoner and the State and lessens the probability that final disposition of the case will do substantial justice. . . . [I]t undermines the character of the writ of habeas corpus as the instrument for resolving fact issues not adequately developed in the original proceedings. . . . [I]t in many instances extends without practical justification the time a prisoner entitled to release must remain in confinement.

*Peyton, supra* at 62-64. Not only in federal courts do memories dim and witnesses die. Even in Hawaii, the bringing of an action in a state court after the lapse of many years cannot resurrect crucial testimony on disputed issues of fact.

The respondent's reliance upon *Engstrom v. Naauao,* 51 Haw. 318, 459 P.2d 376 (1969), is misplaced. We did not hold in *Engstrom* that the petitioner's proper confinement for unchallenged convictions precluded the availability of habeas corpus relief. Indeed, we proceeded to review the merit of each of his substantive allegations. The petitioner argues that:

> This Court in *Engstrom* merely noted that since the petitioner was serving sentences on four (4) separate convictions and the present petition challenged only one of them, he was properly *incarcerated.* Nowhere does the opinion imply that such unchallenged incarceration prevents the litigation of one of the convictions.[8]

I would join the Supreme Court of the United States in rejecting *McNally* and the immediate release rule. The petitioner should not be barred from collaterally attacking al-

---

[8]Appellant's Reply Brief, at 1.

legedly illegal convictions merely because he must continue to serve unchallenged sentences in any eventuality. We should not countenance a rule which would deny the petitioner the right to challenge two of his sentences until after he has served others which have not yet expired.

## II. WERE PETITIONER'S GUILTY AND NOLO CONTENDERE PLEAS VOLUNTARILY AND UNDERSTANDINGLY ENTERED?

In denying the petitioner's application, the circuit court found that "[t]here is nothing in the record to support his allegation that at the time of the pleas he did not understand the nature of the charges or did not make the plea voluntarily." While empirically accurate, the court's observation is hardly dispositive of the issue. In essence, the court below ensnared the petitioner in Catch 22; it sought to impose upon the petitioner the burden of proving the involuntariness or lack of understanding of his plea, and then denied him the evidentiary hearing necessary to meet that burden. This is contrary to the law of Hawaii.

HRS § 660-24 provides in pertinent part that "[u]pon the return of the writ or order to show cause, the court or judge, shall proceed without delay to examine the causes of imprisonment or restraint." HRS § 660-27 states that

> . . . the court shall proceed in a summary way to examine the causes of imprisonment or restraint and to hear evidence which may be offered by any person interested or authorized to appear either in support of the imprisonment or restraint or against it, and thereupon to dispose of the party as law and justice may require.

Thus, our habeas corpus statute, on its face, guarantees an evidentiary hearing to a petitioner alleging facts, which, if true, would establish the illegality of his conviction or convictions.

The material facts in the instant case are strikingly similar to those in *Machibroda v. United States*, 368 U.S. 487 (1962). Represented by counsel of his own choice, the petitioner in that case pleaded guilty to two counts of bank

robbery and was sentenced. His subsequent motion to vacate and set aside the sentence under the habeas corpus statute alleged: (1) that his pleas of guilty had not been voluntarily entered, but had been induced by promises made by the prosecutor, and (2) that the court, in accepting his guilty pleas without first determining that they had been made voluntarily, had failed to comply with F.R.Cr.P., Rule 11. The United States District Court denied the motion without a hearing and the Court of Appeals affirmed. The Supreme Court vacated the judgment, declaring unambiguously:

The District Court did not proceed in conformity with the provisions of 28 U.S.C. § 2255, when it made findings on controverted issues of fact without notice to the petitioner and without a hearing. . . . The statute requires a District Court to "grant a prompt hearing" when such a motion is filed, and to "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." [Footnote omitted.] This was not a case where the issues raised by the motion were conclusively determined either by the motion itself or by the "files and records" in the trial court. The factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the Government's response, related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light. Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge and recollection.

. . . "Not by the pleadings and affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. The Government's contention that his allegations are improbable and unbelievable cannot serve

to deny him an opportunity to support them by evidence. On this record it is his right to be heard." *Walker v. Johnston*, 312 U.S. 275, at 287.

*Machibroda, supra* at 494-95.

The circumstances in the case at bar are at least as compelling as those presented in *Machibroda*. I would therefore hold that HRS ch. 660 requires that where the "factual allegations contained in the petitioner's motion and affidavit . . . related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light," *id.*, at 494-95, a habeas corpus petitioner is entitled to an evidentiary hearing at which he may have an opportunity to meet his burden of proving the involuntariness of his guilty plea.[9]

The respondent's reliance upon *McMann v. Richardson*, 397 U.S. 759 (1970), misses the mark. In that case, the United States Supreme Court held that "a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, *without more*, entitled to a hearing on his petition for habeas corpus." *McMann, supra* at 771. (Emphasis added.) The above holding was subject to the exception that a petitioner might still be entitled to a hearing if "he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Id.*, at 774. *McMann* is clearly distinguishable from the case at bar. First, the petitioner alleges more than a coerced confession; he claims that he was "non compos mentis" at the time he entered his guilty plea and that Rule 11 was thus not complied with. If his claims

---

[9] I note in passing that a retroactive application of *Boykin v. Alabama*, 395 U.S. 238 (1969), would warrant reversal of the petitioner's convictions. However, I need not reach the question of *Boykin's* retroactivity, since the petitioner seeks much more limited relief than that which would be accorded under the *Boykin* standard. *Boykin* held that a habeas corpus petitioner is entitled to a new trial if the trial judge failed to make the affirmative determination, required by F.R.Cr.P., Rule 11, that the petitioner's guilty plea was entered voluntarily. The petitioner's right to an evidentiary hearing on the truth of his factual allegations derives, however, from pre-*Boykin* standards.

are true, then his guilty plea is not otherwise valid. *See McMann, supra* at 760. Second, the petitioner's guilty plea cannot be rationalized as an attempt to save himself the expense of trial and minimize the penalty that might be imposed. *Id.,* at 767-68. His counsel was appointed by the court at no expense to him, and a conviction for first degree murder, to which he entered his guilty plea, carries a mandatory sentence of life imprisonment without parole.[10] Third, the petitioner has not sought to bypass state remedies in his present action. *Id.,* at 768-69. Indeed, he has energetically pursued them, the very course encouraged by implication in *McMann.* Fourth, the petitioner seeks to come within the *McMann* exception by amending his petition additionally to allege ineffective assistance of counsel. Such a course is proper, since the petitioner is not to be held to the niceties of lawyers' pleadings, and permitting him to amend his petition is a better course than denying his original application altogether. *Sanders v. United States,* 373 U.S. 1, 22, 19 (1963). I conclude that the case at bar presents the very sort of "sharp dispute as to the facts material to a determination of the constitutional questions involved. . . . which should be decided only after a hearing." *Pennsylvania ex rel. Herman v. Claudy,* 350 U.S. 116, 120-21 (1956).

### III. PETITIONER'S RIGHT TO COUNSEL

I believe that in the circumstances presented by this appeal, the petitioner is entitled to the assistance of counsel at the evidentiary hearing which he should be accorded. In *Engstrom v. Naauao,* 51 Haw. 318, 321, 459 P.2d 376, 378 (1969), we held that although the

constitutional right to assistance of counsel under the sixth amendment of the United States Constitution, does not apply to habeas corpus proceedings[,] . . . [a]ppointment may be properly made if the petition raises substantial issues which require marshalling of evidence and logical presentation of contentions.

[10]HRS § 748-4.

In finding that the petitioner is entitled to an evidentiary hearing, I have already determined that his application raises such substantial issues. Where, as here, the test of the availability of an evidentiary hearing on facts alleged in a petition for a writ of habeas corpus is met, the petitioner should be provided with the assistance of counsel at such hearing.[11]

I would reverse and remand for proceedings consistent with this opinion.

---

[11]*See* Powell v. Alabama, 287 U.S. 45, 68-69 (1932):
The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He requires the guiding hand of counsel *at every step in the proceedings against him.* . . . If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.
(Emphasis added.)