878 P.2d 699

STATE of Hawai'i, Plaintiff–Appellee,

v.

Glenn NAKATA, Defendant–Appellant
(CR. NO. 90–1679).

STATE of Hawai'i, Plaintiff–Appellee,

v.

Alvin K.L. LAU, Defendant–Appellant
(CR. NO. 90–1657).

STATE of Hawai'i, Plaintiff–Appellee,

v.

Eddie DAOANG, Defendant–Appellant
(CR. NO. 90–1838).

Jon David WHITTINGTON, Petitioner,

v.

James H. DANNENBERG, in his capacity as Judge of the District Court of the First Circuit, State of Hawai'i, and all other District Court Judges of the State of Hawai'i, State of Hawai'i, the real party in interest, Respondents.

Nos. 17317, 17228.

Supreme Court of Hawai'i.

Aug. 2, 1994.

As Amended, Reconsideration Denied
Aug. 18, 1994.

Paul J. Cunney (Arthur E. Ross and Robert D. Eheler, Jr., with him on the briefs), Honolulu, for defendants-appellants Glenn Nakata and Alvin K.L. Lau in No. 17317.

Theodore Y.H. Chinn, Deputy Public Defender, Honolulu, for defendant-appellant Eddie Daoang in No. 17317.

James M. Anderson, Deputy Prosecuting Atty., Honolulu, for plaintiff-appellee State of Hawai'i in No. 17317.

Steven S. Michaels (Gerard D. Lau, with him on the amicus brief), Deputies Atty. Gen., Honolulu, for amicus curiae Atty. Gen. of Hawai'i in No. 17317.

Paul J. Cunney, Arthur E. Ross and Robert D. Eheler, Jr., on the writ, Honolulu, for petitioner Jon David Whittington in No. 17228.

Steven S. Michaels, Deputy Atty. Gen., Honolulu, for respondents in No. 17228.

Arthur E. Ross, Honolulu, for defendants-appellants Glenn Nakata and Alvin K.L. Lau in No. 17317 and for petitioner Jon David Whittington in No. 17228 (on motion for reconsideration).

Theodore Y.H. Chinn, Deputy Public Defender, Honolulu, for defendant-appellant Eddie Daoang in No. 17317 (on motion for reconsideration).

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In 1990, defendants-appellants Glenn Nakata, Alvin Lau, and Eddie Daoang (collectively, the defendants) each requested a jury trial in their individual case on the charge of first-offense driving under the influence of intoxicating liquor (DUI), in violation of Hawai'i Revised Statutes (HRS) § 291–4 (1985). Subsequently, the Hawai'i State Legislature enacted Act 128, 1993 Haw.Sess.Laws 179 (Act 128), which amended the DUI statute by lowering the penalties for a first offense, with the intent of eliminating the right to a jury trial for a first-offense DUI charge. Act 128 also provided for retroactive application to all pending first-offense DUI cases.

After the effective date of Act 128, plaintiff-appellee State of Hawai'i (the prosecution) moved to remand each of the defendants' cases to the district court for bench trials. The First Circuit Court consolidated the three cases, issued findings of fact, and reserved the following two questions of law, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 15[1] and HRS § 602–5(2) (Supp.1992),[2] resulting in supreme court No. 17317:

1. HRAP 15 provides in part:
   **Rule 15. Reserved Questions.** **(a) From What Court.** A circuit court, district court ... and any other court empowered by statute, may reserve for the consideration of the Hawaii appellate courts a question of law arising in any proceedings before it. Questions may

be reserved on motion of any party or on the court's own motion.

2. HRS § 602–5(2) provides:
   **§ 602–5 Jurisdiction and powers.** The supreme court shall have jurisdiction and powers as follows:

1. Whether the amendments to the sentencing provisions of HRS [§] 291–4 provided in Act 128, Session Laws of Hawaii, Regular Session of 1993, effective May 21, 1993, eliminate[ ] the right to jury trial for defendants charged with a first offense under HRS § 291–4.

2. If the amendments to the sentencing provisions of HRS [§] 291–4 provided in Act 128, Session Laws of Hawaii, Regular Session of 1993, effective May 21, 1993, do eliminate the right to jury trial, whether the deprivation of such a right may be applied retrospectively to alleged offenses occurring prior to the enactment of the Act.

We, in turn, consolidated No. 17317 with No. 17228, a petition for writ of prohibition and/or mandamus (petition for writ), filed by Jon David Whittington.[3] Whittington seeks an order (1) barring the district court from hearing his case at a bench trial and (2) committing the case to circuit court for a jury trial.

We answer both reserved questions in the affirmative and, accordingly, deny Whittington's petition for writ.

## I. BACKGROUND

Defendants Daoang, Lau, and Nakata, were arrested for DUI on May 25, 1990, June 10, 1990, and July 30, 1990, respectively, each being charged pursuant to HRS § 291–4 with a first-offense DUI violation. Relying on *State v. O'Brien*, 68 Haw. 38, 704 P.2d 883 (1985), they each requested jury trials, and accordingly, the cases were transferred to the First Circuit Court. While their jury trials were pending, the prosecution, on June 25, 1993, filed motions for remand to the

district court. As previously noted, the trial court issued findings of fact and reserved the two aforementioned questions.

Whittington was arrested for first-offense DUI sometime before May 4, 1993.[4] On May 4, 1993, he demanded a jury trial; however, the district court denied his demand and set the case for a bench trial. Whittington subsequently filed his petition for writ, which we consolidated with No. 17317 because our disposition of the reserved questions would also dictate the disposition of Whittington's petition.

The defendants are not alone in awaiting jury trials. The trial court found that as of July 30, 1993, 3,375 jury trial-DUI cases were pending in the First Circuit Court, although not all involve first-time offenders. The court also found that one First Circuit courtroom is primarily responsible for hearing DUI jury trials and that the prosecution rarely plea-bargains DUI offenses to lesser charges due to the enhanced sentencing scheme provided in HRS § 291–4 for repeat offenders. In passing Act 128, a legislative committee stated that

> there is currently a backlog of approximately 3,000 DUI cases. . . . [A] high percentage of these DUI cases involve first time offenders. . . . This bill will alleviate the current backlog that is overwhelming the judicial system, and will allow for timely adjudication of repeat offenders who pose the greatest risk to the community and public safety.

Sen.Stand.Comm.Rep. No. 1107, in 1993 Senate Journal, at 1177. The House Judiciary Committee determined that

> it would take 5 to 6 Circuit Courts handling nothing but DUI jury trials to clear

---

    . . . .

    (2) To answer, in its discretion, any question of law reserved by a circuit court, the land court, or the tax appeal court, or any question or proposition of law certified to it by a federal district or appellate court if the supreme court shall so provide by rule[.]

3. Hereafter, we shall refer to the defendants and petitioner Whittington collectively as "appellants." Likewise, we attribute individual arguments to all appellants. We note that the Office of the Prosecuting Attorney of the City and Coun-

ty of Honolulu represented plaintiff-appellee State of Hawai'i in No. 17317 and filed an answering brief. The Attorney General of Hawai'i, representing the respondents in No. 17228, filed an answer to the writ as well as an amicus brief in No. 17317. In this opinion, we consolidate the prosecutor's and attorney general's arguments and collectively refer to plaintiff-appellee and respondents as "the prosecution."

4. The record does not reflect Whittington's arrest date.

the backlog and keep up with new cases.... At the same time, the District Court in the First Circuit is capable of disposing of non-jury DUI cases at the rate of 14 to 16 per day, per courtroom, for[, among other] reason[s,] that there are many changes of plea when it is apparent that trial is ready to begin[.]

Hse.Stand.Comm.Rep. No. 600, in 1993 House Journal, at 1212.

At the time of the defendants' arrests, the penalty provisions of HRS § 291–4, as amended in 1989, provided for "[n]ot less than forty-eight hours of imprisonment," with no stated maximum jail term for a first offense.[5] Additionally, a first-time DUI offender could be sentenced to (a) a fourteen hour minimum alcohol abuse rehabilitation program, (b) a maximum ninety-day suspension of license, (c) seventy-two hours of community service, and (d) a fine of not less than $150 but not more than $1,000. *See* Act 128, 1989 Haw.Sess.Laws 248.

For a second offense, committed within five years of a prior conviction, a defendant could be sentenced to "[n]ot less than forty-eight consecutive hours of imprisonment" again, with no stated maximum jail term.[6] In addition, a second-time offender could receive (a) a prompt suspension of license for one year, (b) eighty hours of community service, and (c) a fine of not less than $500 but no more than $1,000. *Id.* at 249.

For a third offense, the stated minimum jail time was ten days, with a maximum of "one hundred eighty days of imprisonment." *Id.* The fine provision for a third-time offender remained the same as for a second-time offender; however, the statute provided for "[r]evocation of license for a period of not less than one year but not more than five years[.]" *Id.* Subsection (c) also provided

that a second- and third-time offender "shall ... be referred to a substance abuse counselor ... for ... an assessment of the offender's alcohol abuse or dependence and the need for appropriate treatment." *Id.*

In 1990, the legislature enacted the following amendments to HRS § 291–4: (1) established a maximum thirty- and sixty-day term of imprisonment for a first- and second-offense DUI, respectively; (2) required that "at least forty-eight hours [of imprisonment for a second- and third-offense DUI] shall be served consecutively;" and (3) added the provision that the court may order the installation of an ignition interlock system[7] in the case of first-time offenders. *See* Act 188, 1990 Haw.Sess.Laws 410–11. The 1990 amendments became effective on August 1, 1991.

Act 128, which became effective on May 21, 1993, (1) reduced the maximum jail sentence for a first-offense DUI charge under HRS § 291–4 from thirty days to five days, (2) repealed the ignition interlock provision for first-time offenders, and (3) provided for retroactive application of Act 128 to all pending first-offense DUI cases.[8]

We examined the 1990 amendments in *State v. Jordan*, 72 Haw. 597, 825 P.2d 1065 (1992), and held that, despite the reduced maximum prison sentence for first- and second-offense DUI from 180 days to thirty and sixty days, respectively, DUI remained a serious crime to which the right to a jury trial attached. *Id.* at 601, 825 P.2d at 1068. The 1993 legislature promulgated Act 128 partially in response to *Jordan*. In passing Act 128 and providing for its retroactive application, the legislature stated:

It is the intent of the legislature that individuals charged with the offense of [DUI]

---

5. As we noted in *O'Brien*, "logic dictates that the maximum terms of imprisonment for first and second offenses cannot exceed that mandated for a third offense. Therefore, the maximum imprisonment [for a first- and second-offense] must also be 180 days." *O'Brien*, 68 Haw. at 44 n. 5, 704 P.2d at 887 n. 5.

6. *See supra* note 5.

7. An "ignition interlock system" is a mechanical device affixed to the ignition system of a motor

vehicle which prevents a vehicle from being started without first testing a sample of the driver's breath for a blood alcohol concentration. HRS § 286–251 (Supp.1992).

8. Section 5 of Act 128 provides that it takes effect upon approval, "providing that [the reduced penalties] shall be retroactive for all pending first-offense cases for [DUI]." 1993 Haw.Sess.Laws at 181.

as a first time offender shall not be entitled to a jury trial.

. . . .

It is the intent of the legislature that the reduced penalties provided for in the Act apply to all pending first offense cases. The legislature further intends that by making the reduced penalties provided for in this Act retroactive to pending cases, it be made clear that such first offenders are not entitled to a jury trial, as the offense is a "petty offense" in the constitutional sense.

Act 128, 1993 Haw.Sess.Laws at 179–80.

## II. *STANDARDS OF REVIEW*

■ The issues presented by the questions reserved pursuant to HRAP 15 are questions of law. We review questions of law under the right/wrong standard. *In re Holt*, 75 Haw. 224, 232, 857 P.2d 1355, 1359, *reconsideration denied*, —— Haw. ——, 863 P.2d 989 (1993).

A writ of mandamus is "an extraordinary remedy that is usually not issued unless the petitioner demonstrates: (1) a clear and indisputable right to relief; and (2) a lack of other means to adequately redress the alleged wrong or obtain the requested action." *Tanaka v. Nagata*, 76 Hawai'i 32, 35, 868 P.2d 450, 453 (1994) (citation omitted).[9]

■ Legislative enactments are ordinarily presumed constitutional. *Pray v. Judicial Selection Comm'n*, 75 Haw. 333, 340, 861 P.2d 723, 727 (1993). In the face of the presumption, a party challenging a statute has the burden of proving unconstitutionality beyond a reasonable doubt; that is, the constitutional defect must be clear, manifest, and unmistakable. *Id.*

## III. *DISCUSSION*

We begin by analyzing the first reserved question under the jury trial provisions of both the United States and Hawai'i Constitutions. We then analyze the question of applying Act 128 retroactively. Finally, we address appellants' equal protection and separation of powers arguments.

### A. *The First Reserved Question*

Whether the amendments to the sentencing provisions of HRS [§] 291–4 provided in Act 128, Session Laws of Hawai'i, Regular Session of 1993, effective May 21, 1993, eliminate[ ] the right to jury trial for defendants charged with a first offense under HRS § 291–4.

### 1. **Federal Constitutional Analysis**

The United States Supreme Court has interpreted the United States Constitution's sixth amendment right to a jury trial more narrowly than this court has interpreted the Hawai'i Constitution's counterpart, article I, § 14. *Compare Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) (no right to a jury trial for a DUI charge with maximum possible prison sentence of six months) *with State v. O'Brien*, 68 Haw. 38, 704 P.2d 883 (1985) (right to jury trial for DUI offense with maximum of 180 days for first and repeat offenders) *and State v. Jordan*, 72 Haw. 597, 825 P.2d 1065 (1992) (right to jury trial for a first- and second-offense DUI having a maximum sentence of thirty and sixty days, respectively).

■ The sixth amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" This fundamental right applies to the states through the fourteenth amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149–50, 88 S.Ct. 1444, 1447–48, 20 L.Ed.2d 491 *reh'g denied*, 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412 (1968). However, the right is not absolute; "petty offenses" are not subject to the sixth amendment guaranty of a jury trial. *Id.* at 159, 88 S.Ct. at 1452–53. Thus, based on the reserved questions, the inquiry narrows to whether first-offense DUI under HRS § 291–4, as amended by Act 128, is a constitutionally petty offense for purposes of the sixth amendment.

9. In light of our affirmative answers to the reserved questions, we need not reach the question of whether a writ of mandamus is the appropriate means of relief in Whittington's situation.

In *Blanton*, the Supreme Court stated the test as follows:

> In determining whether a particular offense should be categorized as "petty," our early decisions focused on the nature of the offense and on whether it was triable by a jury at common law. In recent years, however, we have sought more *"objective indications of the seriousness with which society regards the offense." "[W]e have found the most relevant such criteria in the severity of the maximum authorized penalty."*

489 U.S. at 541, 109 S.Ct. at 1292 (citations omitted) (emphasis added). The Court explained that:

> In using the word "penalty," we do not refer solely to the maximum prison term authorized for a particular offense. A legislature's view of the seriousness of an offense also is reflected in the other penalties that it attaches to the offense.... *Primary emphasis, however, must be placed on the maximum authorized period of incarceration.*

*Id.* at 542, 109 S.Ct. at 1292 (citations omitted) (emphasis added).

The Court in *Blanton* held that a charge under Nevada's DUI statute, which had a maximum authorized prison term of six months as well as other possible penalties (including wearing distinctive clothing identifying the offender as a convicted drunk driver), was not "constitutionally serious." Thus, the sixth amendment granted no right to a jury trial for a charge under the Nevada DUI statute. *Blanton*, 489 U.S. at 545, 109 S.Ct. at 1294.

In *United States v. Nachtigal*, — U.S. —, —, 113 S.Ct. 1072, 1073, 122 L.Ed.2d 374 (1993), the Court reiterated that "offenses for which the maximum period of incarceration is six months or less are pre-

sumptively 'petty'." *Id.* (citing *Blanton*, 489 U.S. at 543, 109 S.Ct. at 1293). "A defendant can overcome this presumption, and become entitled to a jury trial, only by showing that the additional mix of penalties, viewed together with the maximum prison term, are so severe that the legislature clearly determined that the offense is a 'serious' one." *Id.* In *Nachtigal*, the defendant was charged under a federal DUI regulation with operating a motor vehicle in Yosemite National Park while under the influence of alcohol. The Court held that the charge, with a maximum penalty of six months imprisonment, a maximum $5,000 fine, a maximum five year term of probation, and a host of additional penalties,[10] was not constitutionally serious.

Here, the maximum authorized term of imprisonment for a first-offense DUI under HRS § 291-4, as amended, is five days—well below the six-month threshold enunciated in *Blanton*. A first-offense DUI is, therefore, presumptively "petty" for purposes of federal constitutional analysis.

The additional possible mix of penalties for a first-offense DUI conviction under Hawai'i law includes: (1) minimum fourteen-hour attendance at alcohol rehabilitation classes; (2) a ninety-day driver's license suspension; (3) community service; (4) a fine of between $150 and $1,000; (5) compliance with HRS § 287-20 (Supp.1992) (requiring proof of financial responsibility before reapplying for driver's license); and (6) collateral consequences such as payment of costs for most of the penalties. *Nachtigal* clearly suggests that Hawai'i's authorized maximum penalties and the list of additional mix for a first-offense DUI do not overcome the federal presumption that such offense is petty. *See Nachtigal*, — U.S. at —, 113 S.Ct. at 1074 ("it is a rare case where 'a legislature packs an offense it deems "serious" with onerous

---

**10.** The Court in *Nachtigal* noted:
There are 21 discretionary conditions which the sentencing court may impose upon a defendant. Under 18 U.S.C. § 3563(b), a court may require, among other things, that the defendant (1) pay restitution; (2) take part in a drug and alcohol dependency program offered by an institution, and if necessary, reside at the institution; (3) remain in the custody of the Bureau of Prisons during nights and weekends for a

period not exceeding the term of imprisonment; (4) reside at or participate in a program of community correctional facility for all or part of the probationary term; or (5) remain at his place of residence during nonworking hours, and, if necessary, this condition may be monitored by telephonic or electronic devices. §§ 3563(b)(3), (b)(10), (b)(11), (b)(12), (b)(20). *Nachtigal*, — U.S. at — n.*, 113 S.Ct. at 1074 n.*.

penalties that nonetheless do not puncture the 6–month incarceration line'" (citing *Blanton*, 489 U.S. at 543, 109 S.Ct. at 1293)).

■ However, appellants argue that an increased insurance rate based on a DUI conviction is a severe penalty, which adds to the "mix" and results in the offense being constitutionally serious. Indeed, the trial court in this case found that automobile insurance rates increase dramatically for a person convicted of DUI.[11] Despite such determination, we do not consider increased rates by private insurance companies to be a statutory "penalty" for violating HRS § 291–4. *See Blanton*, 489 U.S. at 543 n. 8, 109 S.Ct. at 1293 ("In performing this analysis, only penalties resulting from state action, e.g., those mandated by statute or regulation, should be considered."). Although appellants cite to HRS chapter 287's provisions requiring proof of financial responsibility, insurance companies would likely raise insurance rates regardless of whether a driver convicted of DUI is required to comply with chapter 287 because of the actuarially increased risk that such a driver poses.[12]

Accordingly, we hold that there is no right to a jury trial under the United States Constitution for a first-offense DUI under HRS § 291–4, as amended by Act 128.

## 2. State Constitutional Analysis

■ The Constitution of the State of Hawai'i provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed[.]" Haw. Const. art I, § 14. "Although the right to a jury trial is of great importance, we have also recognized that it is not an absolute right. Specifically, we have held that a defendant charged with a petty crime does not have a constitutional right to a jury trial." *State v. Wilson*, 75 Haw. 68, 73, 856 P.2d 1240, 1243 (citations omitted), *reconsideration de-*

nied, —— Haw. ——, 861 P.2d 735 (1993). Thus, the issue is whether a first-offense DUI, as reconfigured by Act 128, is a petty or serious crime under the Hawai'i Constitution.

■ We analyze three factors to determine whether an offense is constitutionally petty or serious: "(1) treatment of the offense at common law; (2) the gravity of the offense; and (3) the authorized penalty." *Wilson*, 75 Haw. at 74, 856 P.2d at 1244 (citing *O'Brien*, 68 Haw. at 41–43, 704 P.2d at 885–87).

Under the first factor, we consider the "traditional treatment" of the offense and "whether [the] offense was indictable at common law, triable at common law by a jury, or tried summarily without a jury." *Id.*

Under the second factor, we consider whether an offense "affects the public at large, reflects moral delinquency, or carries a sufficient disgrace to require labelling the offense as constitutionally serious." *Id.* In applying the second factor, the legislature's perception of an offense, as reflected by its statements in legislative history, often provides a strong indication of society's view of the gravity of an offense. *Id.* at 75, 856 P.2d at 1245.

Finally, the third factor "focuses on the authorized penalty for the offense." *Id.* at 76, 856 P.2d at 1245. We consider not only the maximum possible prison term, but also the possible additional statutory "mix of penalties" that may attach to the offense. *Id.*

In *Wilson*, we held that a charge under HRS § 291–4.5 (1985) (driving after license suspended for DUI) is constitutionally petty and, therefore, a defendant so charged is not entitled to a jury trial. *Id.* at 78, 856 P.2d at 1246. Significantly, in *Wilson*, we reviewed our past application of the three-part test in *O'Brien* and *Jordan* to the underlying DUI statute, HRS § 291–4.

11. For example, the trial court noted that according to a 1990 study, the average rate for a Toyota rises from $1,086 a year, for a driver with a clear abstract, to $7,913 a year, with a DUI conviction; for a BMW, the rate rises from $1,798 to $14,413 per year.

12. This likelihood is bolstered by the trial court's finding that "insurance companies could lower rates for those convicted and absorb the cost[,]" regardless of compliance with HRS chapter 287.

The test we applied in *Wilson* arose out of *O'Brien*. In *O'Brien*, we analyzed the 1983 version of HRS § 291–4 and interpreted the offense of DUI to be constitutionally serious, granting a right to jury trial. In applying the three-part test in *O'Brien*, this court analogized DUI to common law reckless driving (an indictable offense requiring the right to a jury trial), interpreted legislative pronouncements in assessing the gravity of the offense,[13] and considered the identical maximum prison term of 180 days authorized in 1985 for first and repeat DUI offenders as well as the potential mix of penalties.[14] *O'Brien*, 68 Haw. at 42–43, 704 P.2d at 886. Significantly, the defendant in *O'Brien* was not a first-time DUI offender. *Id.* at 40, 704 P.2d at 885. The holding in *O'Brien* applied to DUI as a whole and did not distinguish between first and repeat offenders. In concluding that the offense of DUI was serious, we commented:

> Were we faced with a situation where a first DUI offense was punishable, for example, *by imprisonment for no more than five days,* a second conviction by imprisonment for no more than ten days and a third, by imprisonment for no longer than one month, we would perhaps be persuaded by State's position that DUI is not a serious offense in the constitutional sense.

*Id.* at 44, 704 P.2d at 887 (emphasis added). By suggesting the maximum prison terms for first and repeat DUI offenses that would perhaps persuade the court that DUI is not constitutionally serious, it is apparent that this court placed primary emphasis on the imprisonment aspect of the three-part test,

as did the United States Supreme Court in *Blanton*, wherein the Court stated:

> Primary emphasis, however, must be placed on the maximum authorized period of incarceration. Penalties such as probation or a fine may engender "a significant infringement of personal freedom," but they cannot approximate in severity the loss of liberty that a prison term entails. Indeed, *because incarceration is an "intrinsically different" form of punishment, it is the most powerful indication of whether an offense is "serious."*

*Blanton*, 489 U.S. at 542, 109 S.Ct. at 1292 (citations omitted) (emphasis added).

The Legislature appears to have specifically considered the comment from *O'Brien* regarding a maximum imprisonment term of five days for a first-offense DUI when it promulgated Act 128, declaring a first offense to be petty. We note that because Act 128 authorizes a maximum prison term of sixty and 180 days for a second- and third-offense DUI, respectively, the legislature arguably rejected this court's suggestion of prison terms that would have included such repeat offenses in the petty category.

In *Jordan*, we applied the three-part *O'Brien* test to the 1990 amended version of HRS § 291–4 (the version immediately prior to Act 128). In assessing the gravity of both a first- and second-offense DUI, we interpreted the legislative history of the 1990 amendment, which "indicate[d] [that] the legislature continue[d] to regard DUI as a very serious crime and social problem" despite reductions in the maximum prison sentence to thirty days for a first offense and to sixty

---

13. In *O'Brien*, we stated:

> Turning to an assessment of the gravity of DUI, we note first the legislative pronouncements on the statutes governing such charges. The legislature's commentary reflects its unequivocal acknowledgement that drunk driving presents a social problem of vast and potentially devastating proportions.... [T]he legislature noted:
>
> > It is frightening to realize that one of every two Americans will be involved in an alcohol-related auto crash in his or her lifetime. In our own state the dimensions of the drunk-driving problem can be highlighted by recent statistics. In 1981, almost two-thirds of Hawaii's traffic deaths were alcohol-relat-

> > ed; drinking drivers involved in all accident here numbered 2,465 in 1980.
> >
> > The problem is already of major proportions, yet it is growing, and will continue to increase unless and until this Legislature provides meaningful sanctions that will deter drunken driving.
>
> *O'Brien*, 68 Haw. at 42–43, 704 P.2d at 886 (citation omitted).

14. As previously noted, the mix of penalties under the 1983 version of HRS § 291–4 was identical to the mix under the 1989 amendments, except that the community service for a second offense was changed from "not less than ten days" to "eighty hours."

days for second offense. *Jordan,* 72 Haw. at 601, 825 P.2d at 1068. We also noted that the legislature had added the ignition interlock penalty provision for a first-time offense. *Id.* at 599, 825 P.2d at 1067. Therefore, in *Jordan,* we continued to interpret all levels of offenses under HRS § 291–4 as constitutionally serious. *Jordan* effectively turned, in part, on our interpretation of the legislature's perception of a first-time DUI offense.

Following Act 128's enactment in 1993, we decided *Wilson.* As noted previously, in *Wilson,* we reviewed a charge related to DUI, that is, driving after license suspended for DUI under HRS § 291–4.5. We based our analysis of the section 291–4.5 charge, in part, on Act 128. We reasoned as follows:

> After reviewing our opinion in *Jordan,* the legislature, in 1993, decisively spoke and deemed our view of its perception of the seriousness of *first time* DUI offenses to be in error.
>
> . . . .
>
> Irrefutably, the legislature regards *first time* DUI offenses as constitutionally "petty" offenses, thereby characterizing the potential mix of penalties faced by a *first time* DUI offender constitutionally "petty" as well. Moreover, it is now clear that the legislature has always viewed *first time* DUI offenses as petty.

*Wilson,* 75 Haw. at 77–78, 856 P.2d at 1245 (emphasis added). We relied on the legislature's specific and unambiguous declaration that:

> [t]he purpose of [Act 128] is to reduce the penalties for first time offenders so that there can be no question that, as to first time offenders, the offense is a "petty offense" in the constitutional sense, to which no right to jury trial attaches. The legislature finds that those *offenders who are convicted repeatedly of driving under the influence of intoxicating liquor represent a serious social problem.* . . . *First time offenders, however, represent less of a threat to society, as most will respond to corrective action.*

Act 128, 1993 Haw.Sess.Laws at 179 (emphasis added).[15] This unequivocal legislative statement provides a strong indication of society's view of the gravity of first offense DUI.

Consequently, we held in *Wilson* that a charge under HRS § 291–4.5 is not constitutionally serious and did not entail the right to a jury trial because "if the legislature had always intended the potential mix of penalties faced by a first time DUI offender to be constitutionally 'petty,' then by promulgating similar penalties for a violation of HRS § 291–4.5, it also intended HRS § 291–4.5 to be constitutionally 'petty'." *Id.* at 78, 856 P.2d at 1246.

In *Wilson,* we relied on the legislature's perception of the gravity of the offense as well as the potential mix of penalties and indicated in *dictum* that a first-offense DUI charge under HRS § 291–4, as amended by Act 128, is constitutionally petty. By noting that "it is now clear that the legislature has always viewed first time DUI offenses as petty," *id.* at 78, 856 P.2d at 1245, we called into question *Jordan* and *O'Brien.* Although we implied in *Wilson* that *Jordan* and *O'Brien* were no longer good law in regard to their application to first-time DUI offenses, we did not explicitly limit or overrule, in

---

15. The House Committee on Judiciary, reporting on House Bill No. 747, House Draft 1, which was eventually enacted as Act 128, stated:

> Your Committee notes that in its amended form, this bill specifically sets forth the Legislature's view that it regards the *repeat* offenders as the serious social problem, for it is the repeat offenders who have demonstrated an unwillingness to modify their behavior. The amended bill sets forth the Legislative finding that the first-time offender is of lesser concern because most first-time offenders will respond to treatment, will modify their behavior, and will cease to be a hazard to the general public. Repeat offenders, on the other hand, require firmer action and represent a serious social problem[,] for by their actions[,] they demonstrate that they are less likely to reform their behavior and hence represent a continuing danger to other motorists, passengers, pedestrians[,] and the public in general.

Hse.Stand.Comm.Rep. No. 600, in 1993 House Journal, at 1213; *see also* Sen.Conf.Comm.Rep. No. 105, in 1993 Senate Journal, at 785–86 (containing language identical to House Judiciary Committee's Report No. 600); Sen.Stand.Comm. Rep. No. 1227, in 1993 Senate Journal, at 1213 ("repeat offenders . . . pose the greatest risk to the community and public safety").

whole or in part, the holdings of either case. Before doing so today, however, we deem it necessary to clarify the *dictum* in *Wilson*, beginning with the fundamental tenet— Above all is the constitution.

"American legislatures must adhere to the provisions of a written constitution.... Our ultimate authority is the Constitution; and the courts, not the legislature, are the ultimate interpreters of the Constitution." *State v. Shak,* 51 Haw. 612, 617, 466 P.2d 422, 425, *cert. denied,* 400 U.S. 930, 91 S.Ct. 191, 27 L.Ed.2d 190 (1970); *see Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 180, 2 L.Ed. 60 (1803) (laws repugnant to the Constitution are void). "It is [the] concept of the Constitution as law, and the judiciary as the institution with responsibility to interpret the law, which remains the cornerstone of judicial review today." R. Rotunda & J. Nowak, *Treatise on Constitutional Law* § 1.3, at 42 (2d ed. 1992). These same principles of judicial review apply when determining whether an offense is constitutionally petty or serious. When addressing the constitutionality of a statute, we have cautioned that

"whether the legislation under review is wise or unwise is a matter with which we have nothing to do. Whether it ... work[s] well or work[s] ill presents a question entirely irrelevant to the issue. The only legitimate inquiry we can make is whether it is constitutional. If it is not, its virtues, if it have any, cannot save it; if it is, its faults cannot be invoked to accomplish its destruction. If the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be abandoned."

*Baehr v. Lewin,* 74 Haw. 530, 582–83, 852 P.2d 44, 68 (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 483, 54 S.Ct. 231, 256, 78 L.Ed. 413 (1934) (Sutherland, J., dissenting)), *reconsideration and clarification granted in part,* 74 Haw. 645, 852 P.2d 74 (1993).

■ In *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, *reh'g denied,* 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412 (1968), the United States Supreme Court wrote:

the boundaries of the petty offense category have always been ill-defined, if not ambulatory. In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial, or ... themselves face the question in the first instance.

*Id.* at 160, 88 S.Ct. at 1453; *see also Frank v. United States,* 395 U.S. 147, 156, 89 S.Ct. 1503, 1509, 23 L.Ed.2d 162 ("We cannot ... place unlimited reliance on legislative definitions and 'existing ... practices in the Nation' and thereby allow Congress and the States to rewrite the [s]ixth [a]mendment [to] the Constitution by simply terming 'petty' any offense regardless of the underlying sentence." (Warren, C.J., dissenting)), *reh'g denied,* 396 U.S. 869, 90 S.Ct. 34, 24 L.Ed.2d 123 (1969). Our task in interpreting whether legislative acts pass constitutional muster is aided by legislative statements which reflect existing public policies relied upon in the enactment of laws.[16] Ultimately, however, our judgment must be independent.

With these principles in mind, we examine and clarify *Wilson* and its interpretation of *O'Brien* and *Jordan.* Initially, we note that the legislative history prior to Act 128 did not specifically distinguish between the "seriousness" of first and repeat DUI offenses. On the contrary, the legislative history prior to Act 128 implicitly perceived first and repeat DUI offenses to be substantially equal in seriousness.

As previously noted, in *O'Brien,* this court relied heavily on the legislature's perception of the gravity of the general nature of DUI as evidenced by its pronouncements culminating in the conclusion that DUI "is one of

**16.** *See Blanton,* 489 U.S. at 541–42, 109 S.Ct. at 1292 ("[the legislature] is far better equipped to perform the task [of assessing the public's perception of whether a crime is petty], and is likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect" (citation omitted) (internal brackets and quotation marks omitted)).

the State's most serious and tragic problems." *O'Brien*, 68 Haw. at 43, 704 P.2d at 886. Additionally, we believed that by providing a maximum imprisonment term of 180 days for first and repeat offenses, the legislature intended no distinction between such offenses in terms of their seriousness. Therefore, although in *Wilson* we interpreted the history of Act 128 in 1993 as indicating that the legislature "always viewed first time DUI offenses as petty," we are not compelled to overrule *O'Brien*. Merely because a legislature by hindsight indicates that an offense should be viewed as petty does not make it so. In short, we must apply all three factors of the *O'Brien/Wilson* test in determining whether an offense is petty or serious.

In *Jordan*, this court dealt with a reserved question presenting the issue of jury trial for both first- and second-time DUI offenders and held that such offenders have a right to a jury trial. Upon applying the *O'Brien* test in *Jordan*, we stated:

> In light of *O'Brien*, we are unwilling to draw such a distinction where the only downgrading of the seriousness of the crime in the statute is a "clarification"[17] by which the maximum jail sentences for first and second offenders is 30 and 60 days, respectively, instead of six months, but where an additional penalty has been added, and where the legislative history of Act 188 of the 1990 Session Laws, as well as Act 1 of the 1991 Special Session, all indicate the legislature continues to regard [DUI] as a very serious crime and social problem.

*Jordan*, 72 Haw. at 601, 825 P.2d at 1068.

The legislative history of Act 128 indicates that the legislature was specifically responding to *Jordan*'s interpretation of the legislature's view of the gravity of a first-offense DUI and explained its perception that "[f]irst time offenders ... represent less of a threat to society, as most will respond to corrective action." Act 128, 1993 Haw.Sess.Laws at

179. Thus, we acknowledged in *Wilson* this court's erroneous interpretation, in *Jordan*, of the legislative perception regarding first time DUI offenders, thereby implicitly overruling *Jordan*. To the extent that the court in *Jordan* interpreted first-offense DUI to be constitutionally serious, we explicitly overrule it today.

Despite our reasoning in *Wilson*, appellants argue that first-offense DUI remains constitutionally serious. They contend that a reduction from a thirty- to five-day maximum jail sentence is insignificant, and that the additional maximum "mix of penalties" has not otherwise changed from that in *Jordan* and *O'Brien* (other than eliminating the unimplemented ignition interlock provision). Essentially, they argue that the reasoning in *Jordan* and *O'Brien* compels the finding that DUI *per se* is serious. They assert that the current mix of penalties indicates that the people of Hawai'i view DUI as a grave and serious offense. However, as analyzed previously in this opinion and in *Wilson*, the legislature clearly perceives the nature of the gravity and seriousness of first-offense DUI to be petty and repeat offenses to be serious. Furthermore, Act 128 supports the legislature's perception that first-offense DUI is petty by (1) amending first-offense DUI so as to provide a maximum prison term of only five days, (2) eliminating the possible penalty of court-ordered installation of an ignition interlock device in a first-time DUI offender's vehicle, and (3) leaving untouched additional statutory penalties that do not approach the seriousness of imprisonment.

In support of their position that a first-offense DUI is constitutionally serious, appellants cite *Dow v. Circuit Court*, 995 F.2d 922 (9th Cir.1993), *cert. denied*, ⸺ U.S. ⸺, 114 S.Ct. 1051, 127 L.Ed.2d 372 (1994), an opinion arising out of Hawai'i, which holds that a person convicted of DUI and sentenced to mandatory attendance at an alcohol rehabilitation program was "in custody" for

---

17. As previously stated, we noted in *O'Brien* that HRS § 291-4, as then worded, imposed a six-month maximum penalty for a third offense and assumed that it also imposed the same maximum for a first and second DUI offense. *See supra* note 5. We explained in *Jordan* that, based on the legislative history, the addition of the maxi-

mum jail term for a first- and second-offense DUI, which the legislature referred to as a "clarification," was in response to this court's interpretation that the six month maximum penalty for a third offense applied to all levels of DUI offenses. *See Jordan*, 72 Haw. at 600, 825 P.2d at 1067.

purposes of habeas corpus review of the conviction under 28 U.S.C. § 2254(a) (1966). Nevertheless, whether a conviction is subject to review on habeas corpus grounds is not a factor in determining the constitutional seriousness of an offense. Moreover, whether a person is "in custody" is irrelevant to determining the right to a jury trial. Indeed, "[t]he kind of custody that will suffice [for habeas corpus purposes] is judged by a very liberal standard, and *any* restraint on a petitioner's liberty because of [a] conviction that is over and above what the state imposes on the public generally will suffice." 17A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure*, § 4262, at 305 (1988) (citing *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (a prisoner free on parole is in custody and may seek habeas corpus relief)) (emphasis added). Thus, appellants' reliance on *Dow* is misplaced.

Appellants also argue that the social stigma attached to a DUI conviction and its collateral consequences, such as dramatic increases in car insurance premiums and mandated compliance with HRS § 287–20 (proof of financial responsibility) in order to drive, make the offense constitutionally serious. But, consistent with our earlier analysis of the federal constitution, increased insurance rates by private insurers are not considered penalties because neither chapter 287 nor any other statutory scheme mandates that insurance companies increase rates for drivers convicted of DUI. *See Blanton*, 489 U.S. at 543 n. 8, 109 S.Ct. at 1293 n. 8.

Appellants also cite federal and state cases from other jurisdictions holding that there is a right to a jury trial for DUI charges. *See, e.g., Opinion of the Justices (DWI Jury Trials)*, 135 N.H. 538, 608 A.2d 202 (1992) (six-month prison term for *second* DUI offense without right to jury trial violates New Hampshire constitution); *United States v. Craner*, 652 F.2d 23 (9th Cir.1981) (DUI on Yosemite National Park with maximum penalty of six months imprisonment and $500

fine is a serious offense providing a right to a jury trial); *United States v. Woods*, 450 F.Supp. 1335 (D.Md.1978) (DUI on a national park with maximum six months imprisonment and $500 fine is a serious offense); *Baker v. City of Fairbanks*, 471 P.2d 386 (Alaska 1970) (holding that a jury trial is provided for *any* criminal offense, regardless of potential prison sentence, under the Alaska Constitution). These cases review constitutional requirements, legislative histories, and penalties different than under Hawai'i's DUI statute. Furthermore, the cited federal cases are pre-*Blanton*, and therefore, have been implicitly overruled.

Appellants also claim that the legislature's stated intent in Act 128 is "constitutionally suspect" because it conflicts with the intent set forth in Act 188, 1990 Haw.Sess.Laws 399.[18] The preamble to Act 188 explained that "the legislature finds that driving under the influence of alcohol poses a very real and serious danger to the safety and welfare of the people of this State and requires stronger measures to ensure that people who drink do not drive and that those who do are taken off the road promptly." Act 188, 1990 Haw. Sess.Laws at 399.

We are not persuaded by appellants' reference to Act 188 because the intent set forth in Act 128, at issue here, is clear. The 1993 Legislature specifically passed Act 128 in response to *Jordan* and the overwhelming backlog of cases burdening the judiciary. Moreover, Act 188 has no bearing on the legislative mandate expressed in Act 128, nor does it distinguish the "real and serious dangers" posed by repeat offenders as does Act 128.

In response to appellants' arguments, the prosecution points out that HRS § 806–60 (1985) specifically defines "serious crime" in a jury trial context to mean "any crime for which the defendant may be imprisoned for six months or more." HRS § 806–60. Given the statutory definition, the prosecution argues that there is no right to a jury trial

---

**18.** Act 188 promulgated the Administrative Driver's License Revocation Law, HRS, chapter 286. *See generally Kernan v. Tanaka*, 75 Haw. 1, 856 P.2d 1207 (1993) (describing program for administrative procedures to revoke driver's license for DUI offenses and holding that the program is constitutional), *cert. denied,* —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). Act 188 also amended HRS §§ 291–4, 291–4.5, and 321–161. Act 188, 1990 Haw.Sess.Laws at 399–413.

under HRS § 291–4 because the maximum term of imprisonment is six months regardless of the number of repeat offenses (and that therefore *Jordan* and *O'Brien* were wrongly decided). However, the definition does not apply in the current context.

HRS § 806–60 provides:

**Jury of twelve required.** Any defendant charged with a serious crime shall have the right to trial by a jury of twelve members. "Serious crime" means any crime for which the defendant may be imprisoned for six months or more.

Section 806–60 was promulgated "to conform the Hawaii Revised Statutes to the Hawaii State Constitution as amended by the constitutional convention of 1978." Act 89, 1979 Haw.Sess.Laws 173. Thus, section 806 codifies article I, § 14, of the Hawai'i Constitution. Article I, § 14 states in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury.... *Juries, where the crime charged is serious, shall consist of twelve persons.*

(Emphasis added). The emphasized provision was added during the 1978 Constitutional Convention in response to *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (upholding a Florida law providing for a six-person jury in a noncapital criminal case).[19] *See* Committee of the Whole Debates, *reprinted in* 2 Proceedings of the Constitutional Convention of Hawai'i of 1978 [hereinafter Proceedings] at 679–84.

■ When adding the new provision, the constitutional convention delegates were not addressing the serious versus petty distinction at issue in this case. They were merely focusing on the number of members on a jury; the right to a jury trial itself was presumed to exist. For example, when Delegate Penebacker introduced the relevant motion, he stated:

The concept of the 12–person jury is an integral part of our judicial system....

Reducing the number of jurors in serious criminal cases will have an adverse effect on the purpose for which a jury is required by our judicial system.... The fewer the jurors, the more likely that these cases will be tried on the streets and in the media. We must protect against this. *The 12–person jury in serious criminal cases* would do much to insure that minority opinions are heard and that the detrimental effects of community outrage are tempered by calm deliberation.

2 Proceedings at 679–80 (emphasis added). Delegate DiBianco echoed the rationale:

Some states have had occasion in very recent years ... to change the number [of jurors].... I don't want to see us run the risk of having that kind of thing happen in Hawaii.... *Certainly, at least for serious cases, we should go with the 12–[person] jury* and we should have the protection in the Constitution.... [W]hen you're concerned with a serious felony, I think every defendant should feel safe in the knowledge that his Constitution mandates that he will have a 12–[person] jury, and neither our legislature, our judges, nor anybody else can tamper with it.

*Id.* at 682. There was no mention of the serious/petty distinction that would determine the right to a jury trial. On the contrary, jury trials for a class of "non-serious" crimes were contemplated, but only in the context of fewer members on the jury. As Delegate Penebacker explained:

The absolute right to a 12–person jury is unnecessary in some situations because the potential penalty may [not] be severe or create a great likelihood that justice may be miscarried. It is important to allow for economic and efficiency considerations in these situations since they might not affect a fair or impartial trial. *Thus a smaller jury of lesser members might be more just.*

*Id.* at 680 (emphasis added). In further support of our conclusion that "serious," as used in HRS § 806–60 and in article I, § 14, does not refer to the serious/petty distinction at issue in the instant case, we note that the

---

**19.** *Williams* overruled *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), wherein the Supreme Court held that the sixth

amendment requires a jury of twelve persons and is applicable to the states by the fourteenth amendment.

language of article I, § 14 essentially tracks the language of the sixth amendment of the United States Constitution but that article I, § 14 additionally provides that "[j]uries, where the crime charged is *serious*, shall consist of twelve persons." (Emphasis added.) Despite the absence of any reference to "serious" crimes under the sixth amendment, the serious/petty distinction, in the context of the right to jury trial, exists because of the practice at common law.

> So-called petty offenses were tried without juries both in England and in the Colonies and *have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions.* There is no substantial evidence that the Framers intended to depart from this established common-law practice, and the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive nonjury adjudications.

*Duncan v. Louisiana,* 391 U.S. at 160, 88 S.Ct. at 1453 (emphasis added).

In sum, applying the three-part test from *Wilson,* we now hold that a charge of first-offense DUI under HRS § 291-4, as amended by Act 128, is constitutionally petty. The distinction between first and repeat offenders in Act 128's legislative history is critical, and the maximum mix of statutory penalties does not compel a different result.[20] Being a constitutionally petty offense, no right to a jury trial attaches to first-offense DUI. Therefore, we now specifically limit *O'Brien* to its facts and *Jordan* to repeat DUI offenses; to the extent the holding of *Jordan* grants the right to a jury trial for first-offense DUI, we specifically overrule it. Given the current legislative view of the seriousness of repeat offenses and the mix of potential penalties, however, repeat offenses remain constitutionally serious. Accordingly, we answer the first reserved question in the affirmative.

### B. *The Second Reserved Question*

If the amendments to the sentencing provisions of HRS [§] 291-4 provided in Act 128, Session Laws of Hawai'i, Regular Session of 1993, effective May 21, 1993, do eliminate the right to jury trial, whether the deprivation of such a right may be applied retrospectively to alleged offenses occurring prior to the enactment of the Act.

HRS § 1-3 (1985) provides that "[n]o law has any retrospective operation, *unless otherwise expressed or obviously intended.*" (Emphasis added.) As noted previously, section 5 of Act 128 provides that it takes effect upon approval, "provided that [the reduced penalties] shall be retroactive for all pending first-offense cases for [DUI]." 1993 Haw. Sess.Laws at 181. Therefore, for purposes of HRS § 1-3, HRS § 291-4, as amended by Act 128, clearly applies retroactively to pending cases.

Appellants, however, challenge the constitutionality of the retroactive application of HRS § 291-4, as amended. Appellants argue that to retroactively apply Act 128 would deprive them of a vested fundamental right to a jury trial in violation of the *ex post facto* clause of the United States Constitution[21] and violates due process. The prosecution, on the other hand, argues that because Act 128 transforms a first-offense DUI under HRS § 291-4 into a constitutionally petty offense, the appellants' argument against retroactive application is frivolous. The prosecution essentially argues that no right has been taken away; rather, the crime is different because the penalties under the

---

**20.** We note that the first prong of the test—treatment of the offense at common law—is inapplicable in analyzing first offense DUI. To the extent *O'Brien* relied on an analogy to common law reckless driving, we no longer deem the analogy to be controlling. *Cf. United States v. Woods,* 450 F.Supp. at 1345 ("The Court is unaware whether [DUI] was indictable at common law.... Nevertheless, the Court believes that this inquiry, even if it could be pursued to an accurate conclusion, is irrelevant to the instant action [whether there is a right to a jury trial for DUI]").

**21.** There is no *ex post facto* clause in the Hawai'i Constitution and, thus, appellants' arguments for a broader reading on state law grounds are misplaced.

amended § 291–4 are lesser, and therefore, the corresponding right is different.

■ The burden is on the appellants to show that Act 128 is a plain, clear, manifest, and unmistakable violation of the *ex post facto* clause of the United States Constitution and due process. We therefore address each alleged violation in turn to determine whether appellants have met their burden.

### 1. The *Ex Post Facto* Clause

■ The *ex post facto* clause of the United States Constitution provides that "[n]o state shall ... pass any ... ex post facto law." U.S. Const. art. I, § 10, cl. 1. The clause prohibits states from enacting retrospective penal legislation.

In *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), the United States Supreme Court was presented with the question "whether the application of a Texas statute, which was passed after respondent's crime and which allowed the reformation of an improper jury verdict in respondent's case, violate[d] the *Ex Post Facto* Clause of Art. I, § 10." [22] *Id.* at 39, 110 S.Ct. at 2717. In summarizing the meaning of the *ex post facto* clause, the Court stated:

"It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute [ (1) ] which punishes as a crime an act previously committed, which was innocent when done[, (2) ] which makes more burdensome the punishment for a crime, after its commission, or [ (3) ] which deprives one charged with [a] crime of any defense available

according to law at the time when the act was committed, is prohibited as *ex post facto*."

*Id.* at 42, 110 S.Ct. at 2719 (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). "The *Beazell* formulation is faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause: *Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.*" *Id.* (emphasis added); *see also State v. Von Geldern*, 64 Haw. 210, 212, 638 P.2d 319, 321 (1981) ("no new punitive measure may be applied to a crime already consummated.... Such legislation would be [an] ex post facto law").

Act 128 passes this constitutional test. The Act reduces, not increases, possible punishment. It reduces the maximum sentence from thirty to five days and eliminates a provision for an ignition interlock system. In *Von Geldern*, this court held that an amendment to a sentencing statute (HRS § 706–606.5), which allowed a judge to consider mitigating circumstances and possibly reduce a mandatory minimum sentence, applied retrospectively because the provisions were ameliorative and remedial. *Id.* at 216, 638 P.2d at 324. The *Von Geldern* court remanded for resentencing, ruling that because the ameliorative provisions were not "detrimental nor materially disadvantageous," the law was not *ex post facto*. *Id.* at 213, 638 P.2d at 322. Thus, retroactive application of HRS § 291–4, as amended by Act 128, is clearly not prohibited.

Appellants, however, relying on *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed.

---

22. Respondent was convicted of aggravated sexual abuse, sentenced to life imprisonment, and fined $10,000. In his subsequent state petition for a writ of habeas corpus, Respondent argued that the Texas Code of Criminal Procedure did not authorize both a fine and a term of imprisonment for his offense, and thus, he was entitled to a new trial. Before the writ was decided, a new Texas statute was passed allowing an appellate court to reform an improper verdict assessing a punishment not authorized by law. Relying on the new statute, the Court of Criminal Appeals, which has the exclusive power under Texas law to grant writs of habeas corpus, reformed the verdict by ordering deletion of the $10,000 fine and denied his request for a new trial.

Arguing that retroactive application of the new Texas statute violated the *ex post facto* clause of the United States Constitution, Respondent filed a federal writ of habeas corpus, which was denied by the district court but entertained by the court of appeals. The court of appeals, relying on *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), reversed, holding that retroactive procedural statutes violate the *ex post facto* clause unless they "leave untouched all of the substantial protections with which existing law surrounds the person accused of the crime." *Id.* at 352, 18 S.Ct. at 623. The court held that Respondent's right to a new trial was such a "substantial protection." The United States Supreme Court granted certiorari to review the granting of the writ.

1061 (1898), argue that "the prohibition against [e]x [p]ost [f]acto legislation should bar the divestiture of the right to trial by jury." The United States Supreme Court, in *Thompson*, held that a Utah law, reducing a criminal jury size from twelve to eight, deprived a defendant of "a substantial right involved in his liberty," thus violating the *ex post facto* clause. *Collins*, 497 U.S. at 47, 110 S.Ct. at 2721–22 (quoting *Thompson*, 170 U.S. at 352, 18 S.Ct. at 623). *Thompson* and other Supreme Court cases have held that procedural changes could constitute *ex post facto* violations if they "affect matters of substance," deprive defendants of "substantial protections with which the existing law surrounds the person accused of crime," or arbitratily infringed upon "substantial personal rights." *Collins*, 497 U.S. at 45, 110 S.Ct. at 2720 (citations omitted). The Supreme Court, in *Collins*, acknowledged that "this language ... has imported confusion into the interpretation of the *Ex Post Facto* Clause." *Id.* at 45, 110 S.Ct. at 2721. The Court, therefore, specifically overruled *Thompson*, commenting as follows:

> *The right to jury trial* provided by the Sixth Amendment is obviously a "substantial" one, but it *is not a right that has anything to do with the definition of crimes, defenses, or punishments,* which is the concern of the *Ex Post Facto* Clause. To the extent that *Thompson v. Utah* rested on the *Ex Post Facto* Clause and not the Sixth Amendment, we overrule it.

*Id.* at 51–52, 110 S.Ct. at 2724 (footnote omitted) (emphasis added).

Here, the retroactive application of Act 128, in the context of an *ex post facto* analysis, affects only the procedural determination of whether appellants will be tried by a judge or jury; their right to a fair and impartial trial has not been compromised or divested in any way. We fail to see any substantial prejudice which would result to appellants from the retrospective application of a non-jury trial.

Thus, we conclude that retrospectively applying Act 128 does not violate the *ex post facto* clause of the United States Constitution.

### 2. Due Process

Appellants next argue that depriving them of a vested substantive and fundamental right violates due process. Under the rubric of "due process," appellants blend the arguments that changes to substantive rights may not be applied retroactively and retroactive application is fundamentally unfair.

#### a. *Retroactive Application of Changes to Substantive Rights*

■ Appellants cite cases from other jurisdictions holding that the right to a jury trial is a substantive right. *See State v. Chapman*, 15 Kan.App.2d 643, 814 P.2d 449 (1991); and *Bertolino v. Industrial Comm'n of Ohio*, 43 Ohio St.3d 44, 538 N.E.2d 1040, *reh'g denied*, 44 Ohio St.3d 706, 541 N.E.2d 626 (1989). However, unlike the cases before us, we note that both cases dealt with *statutory* (not constitutional) grants of jury trials.

In *Chapman*, the defendant faced a speeding charge. Although a jury trial for a traffic offense was not guaranteed by the Kansas Constitution, a state statute granted the defendant that right. *Chapman*, 15 Kan. App.2d at 644, 814 P.2d at 450. While the action was pending, the legislature amended the statute to eliminate the jury trial right. The Kansas appellate court held:

> We believe [defendant] had a substantive right to a jury trial under a previously existing state law. Although this right could be modified, the repeal of the law which conferred the right should not have a retroactive effect so as to deprive [defendant] of the jury trial to which he was entitled.
>
> It is difficult to conceive of a more fundamental right than an accused's right to a jury trial. *In the absence of clear statutory language to the contrary,* we believe the legislature intended the statutory changes, discussed here, to operate prospectively only, and not retroactively.

*Id.* at 646–47, 814 P.2d at 451 (emphasis added). In the instant case, however, there is "clear statutory language to the contrary." As noted previously, Act 128 provides that "[t]he amended penalty provisions for first time offenders shall be retroactive for all

pending first time offense cases for [DUI]." 1993 Haw.Sess.Laws at 180.

Similarly, in *Bertolino,* a party had a statutory right to have a jury determine damages for an intentional tort. *Bertolino,* 43 Ohio St.3d at 44, 538 N.E.2d at 1040. While appellant's case was pending, the legislature amended the statute, eliminating the jury trial right. The Ohio Supreme Court held that because the right to a jury trial is substantive, it could be applied prospectively only (regardless of legislative intent). *Bertolino,* 43 Ohio St.3d at 46, 538 N.E.2d at 1042. However, the court in *Bertolino* relied on a ban against retroactivity grounded in Ohio's Constitution itself. *See* Ohio Const. art 2, § 28 ("The general assembly shall have no power to pass retroactive laws[.]"). Hawai'i's Constitution has no such provision. Rather, as noted previously, Hawai'i law provides, by statute, that "[n]o law has any retrospective operation, *unless otherwise expressed or obviously intended.*" HRS § 1–3 (emphasis added). The intent of the legislature that HRS § 291–4, as amended, have retroactive application is clearly set forth in Act 128.[23]

#### b. *Fundamental Fairness of Retroactive Application*

■ Appellants also argue that retroactive application of court decisions is fundamentally unfair, citing *State v. Ikezawa,* 75 Haw. 210, 857 P.2d 593 (1993). Ikezawa was originally charged with third degree assault, which was dismissed without prejudice. Fourteen months later, based on the same incident, Ikezawa was charged with second degree assault. Prior to trial, Ikezawa moved to dismiss on the ground that the six-month period within which trial must commence under Hawai'i Rule of Penal Procedure (HRPP) 48(b)(1) had lapsed. The court denied the motion, and Ikezawa was subsequently convicted of the lesser included offense of assault in the third degree. Ikezawa appealed the court's denial of his Rule 48 motion.

The issue on appeal involved the retroactive application of our decision in *State v.*

*Balauro,* 73 Haw. 70, 828 P.2d 267 (1992), which had been decided subsequent to Ikezawa's trial. *Balauro* had departed from previous precedent by interpreting HRPP 48(c)(6) to exclude certain periods of time from the six-month period within which a trial is required. 73 Haw. at 73, 828 P.2d at 268–69. In *Ikezawa,* this court held that where substantial prejudice results from retrospective application of a new decision, it would be applied prospectively only. 75 Haw. at 220–21, 857 P.2d at 599.

In *Ikezawa,* we reasoned that "[t]he Constitution neither prohibits nor requires retrospective effect.... Free to apply decisions with or without retroactivity, the Court's task is to exercise its discretion, weighing the merits and demerits of retroactive application of the particular rule." *Id.* at 220, 857 P.2d at 598 (citing *State v. Santiago,* 53 Haw. 254, 268, 492 P.2d 657, 665 (1971)).

The *Ikezawa* court recognized the need to consider different factors in determining whether to apply a decision retroactively. We noted that the United States Supreme Court "has given consideration to three factors: (a) the purpose to be served by the newly announced rule[;] (b) the extent of reliance by law enforcement authorities on the old standards[;] and (c) the effect on the administration of justice of a retroactive application of the new standards." *Id.* (citing *Santiago,* 53 Haw. at 268–69, 492 P.2d at 665–66). We stated that, alternatively, " '[f]actors to be considered include: Prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation; interests in the administration of justice and the integrity of the judicial process.' " *Id.* (citing *Russell v. Blackwell,* 53 Haw. 274, 277, 492 P.2d 953, 956 (1972)). We emphasized that implicit in these factors is the concept of fairness. *Id.*

Relying on the selective-retroactive doctrine set forth in *Santiago* and *Russell,* the court in *Ikezawa* declined to retrospectively apply its holding in *Balauro,* applying instead case law applicable prior to Ikezawa's

---

**23.** Appellants also cite *Village of Menomonee Falls v. Michelson,* 104 Wis.2d 137, 311 N.W.2d 658 (1981). *Michelson,* however, also involved a

statutory grant of a jury trial. *Id.* at 141, 311 N.W.2d at 663.

trial. The selective-retroactive doctrine in *Santiago* and *Russell* was based on United States Supreme Court authority from the 1960s enunciated in, among other cases, *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See generally* R. Fallon & D. Meltzer, *New Law, Non–Retroactivity, and Constitutional Remedies*, 104 Harv.L.Rev. 1731 (1991). Under this doctrine, a court "could deny retroactive effect to a newly announced rule of criminal law" based upon factors such as "the purpose of the new rule, the reliance placed upon the previous view of the law, and the effect on the administration of justice of a retrospective application of the new rule." *Harper v. Virginia Dept. of Taxation*, —— U.S. ——, ——, 113 S.Ct. 2510, 2516, 125 L.Ed.2d 74 (1993) (citations omitted) (internal quotation marks omitted).

The United States Supreme Court, however, has overruled its previous precedents in the non-retroactivity area and now applies retroactively all its new criminal decisions whose holdings are applied to the appealing party. In *Harper*, the Supreme Court recently confirmed that it "overruled *Linkletter* in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and eliminated limits on retroactivity in the criminal context by holding that all newly declared ... rule[s] must be applied retroactively to all criminal cases pending on direct review." *Harper*, —— U.S. at ——, 113 S.Ct. at 2516 (citation omitted) (internal quotation marks omitted).[24] *See also United States v. Johnson*, 457 U.S. 537, 545–48, 102 S.Ct. 2579, 2584–86, 73 L.Ed.2d 202 (1981) and *Powell v. Nevada*, —— U.S. ——, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994).

We acknowledge that this recent United States Supreme Court case law, by overruling the doctrinal foundation of Hawai‘i case law, could call into question our continued adherence to *Ikezawa*. However, relying on independent state law grounds, we choose to continue to follow the more flexible test we reiterated in *Ikezawa* when determining whether to retroactively apply decisions of state law made by this court.

In *Ikezawa*, we held that the defendant was substantially prejudiced by his reliance on previous precedent because the success of defendant's motion to dismiss turned on whether the *Balauro* case would be given retroactive effect. *Ikezawa*, 75 Haw. at 222, 857 P.2d at 599. Thus, the retroactivity question was outcome-determinative. Here, appellants have failed to show how they would be substantially prejudiced by the retroactive application of Act 128. The appellants would receive an impartial trial, albeit a non-jury trial, and would face lesser penalties under the new version of HRS § 291–4. As the Supreme Court stated in *Duncan*:

> We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury. Thus we hold *no constitutional doubts about the practices, common in both federal and state courts, of ... prosecuting petty crimes without extending a right to jury trial.*

*Duncan*, 391 U.S. at 158, 88 S.Ct. at 1452 (emphasis added). Unlike *Ikezawa*, retroactive application of Act 128 would not be outcome-determinative.

Therefore, we hold that retroactive application of today's decision to pending cases passes the test enunciated in *Ikezawa*. Accordingly, we answer the second reserved question in the affirmative.

### C. *Equal Protection and Separation of Powers*

■ The trial court made a finding that some DUI defendants, charged *after* appellants were charged, have already had jury trials. Thus, appellants claim they have been treated differently than similarly situated individuals in violation of their equal protection

---

**24.** Under federal law, a similar rule also now applies in the civil context. *Harper* overruled *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) and applied a civil decision retroactively. *Harper*, —— U.S. at ——, 113 S.Ct. at 2518 (citing *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 540–41, 111 S.Ct. 2439, 2446, 115 L.Ed.2d 481 (1991)).

rights under both the United States and Hawai'i constitutions.

When a denial of equal protection of the laws is alleged, the initial inquiry is whether the legislation is subjected to a "strict scrutiny" or a "rational basis" test. *Baehr v. Lewin,* 74 Haw. 530, 571, 852 P.2d 44, 63, *reconsideration and clarification granted in part,* 74 Haw. 645, 852 P.2d 74 (1993). If either a suspect class or fundamental right is involved, the court applies a strict scrutiny analysis. *Id.* Otherwise, the rational basis standard traditionally applies, that is, whether the statute has a rational relationship to a legitimate government interest. *Id.* at 572, 852 P.2d at 64.

Act 128 does not divest the appellants of a constitutional right to trial by jury because that right never applied to "petty offenses." In enacting the statute, the legislature merely clarified its original view that first-time DUI offenses are constitutionally petty. Therefore, no fundamental constitutional right being implicated, the court applies a rational basis standard of review.

Act 128 passes a rational-basis review. The purpose of the reduction in penalties is to make clear that first-offense DUI is constitutionally petty. The state interest is to allow non-jury trials for first-offense DUI charges and, therefore, "alleviate the current backlog that is overwhelming the judicial system, and ... allow for timely adjudication of repeat offenders who pose the greatest risk to the community and public safety." Sen. Stand.Comm.Rep. No. 1107, in 1993 Senate Journal, at 1177. Thus, we hold that the state interest is legitimate and the Act is rationally related to the interest. *See Meyer v. Jones,* 106 N.M. 708, 713, 749 P.2d 93, 98 (1988) (right of jury trial for DUI in "magistrate court" while no right in "metropolitan court" in same state not an equal protection violation).

Moreover, if the court does *not* apply Act 128 retroactively, defendants charged after enactment of the Act could argue that *they* are being denied equal protection. If we were to subscribe to the selective-retroactive application theory proffered by the appellants, those charged after Act 128 would have nonjury trials while those charged before

would be entitled to jury trials although all would face the same reduced penalties. Indeed, this is one tenet relied on by the United States Supreme Court in *Griffith,* in deciding to apply all new criminal decisions retroactively. *See Griffith,* 479 U.S. at 322–23, 107 S.Ct. at 713 ("[s]elective application of new rules violates the principle of treating similarly situated defendants the same.... [T]he problem with not applying new rules to cases pending on direct review is 'the *actual inequity* that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary' of a new rule." (Citation omitted) (Emphasis in original)).

Lastly, appellants raise a separation of powers argument. They argue that the legislature cannot usurp the judicial branch's power by denying jury trials to first-time DUI offenders. This argument plainly fails because Act 128 itself does not eliminate the jury trial right; this court's interpretation of Act 128 determines whether, as a matter of constitutional law, a defendant must be given the right to a jury trial. Because the legislature does not answer this question for the court, we find no merit to appellants' separation of powers argument. As we indicated previously, the legislature's mere labeling of a criminal offense as "petty" does not necessarily make it so. It is the judicial branch that independently determines whether such a label is justified.

## IV. *CONCLUSION*

Based on the foregoing discussion, we hold that a charge of first-offense DUI under HRS § 291-4, as amended by Act 128, is constitutionally petty and, therefore, no right to jury trial attaches to first-offense DUI. Consequently, we overrule *State v. Jordan,* 72 Haw. 597, 825 P.2d 1065 (1992), to the extent that it deals with first-offense DUI. We specifically limit *Jordan* to repeat DUI offenses, which remain constitutionally serious. Accordingly, we answer the first reserved question in the affirmative.

We also hold that (1) the retrospective application of HRS § 291-4, as amended by Act 128 does not violate the *ex post facto*

clause of the United States Constitution and, (2) retroactive application of our decision today to pending cases passes the test enunciated in *State v. Ikezawa,* 75 Haw. 210, 857 P.2d 593 (1993). We therefore answer the second reserved question in the affirmative.

Having answered both reserved questions affirmatively, we remand those cases which are the subject of appeal No. 17317, that is, *Nakata, Lau,* and *Daoang* for further proceedings. We also deny Whittington's petition for writ of mandamus and/or prohibition.